### UNITED STATES v. A QUANTITY OF CANDY CONTAINING TRINKETS et al.

Misc. No. 7384.

United States District Court
E. D. Virginia, Norfolk Division.

Feb. 7, 1951.

William B. Eley, Asst. U. S. D. A., Norfolk, Va., Geo. R. Humrickhouse, U. S. Atty., Richmond, Va., for plaintiff.

Edwin C. Kellam, Norfolk, Va., Kellam & Kellam, Norfolk, Va., for defendants.

BRYAN, District Judge.

The contents of two slot machines have been libeled as adulterated food, specifically, balls of candy and chewing gum as containing deleterious and non-nutritive substances, contraband under the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1040, 21 U.S.C.A. § 301 et seq. With the evidentiary facts undisputed, the lone question is whether the gum or candy was adulterated by the admixture of small metallic and plastic trinkets. The answer depends on whether the gum or candy "contains" the trinkets.

The slot machines are identical and no variant in them or their content necessitates separate consideration. The gum is in the form of a small marble, less than a half-inch in diameter, while the candy is somewhat smaller, but also spheroidal —a candy-coated peanut.

The trinkets are made of plastic and metal, in the design of animals, clocks, hats, boots, balls, rings, and lapel-pins. They are in bright and varied colors, like the units of gum and candy, but except for the balls, the trinkets differ from the units in shape, and some are smaller and others larger.

The machine operates on the coin-in-the-slot principle. Its wares are held within a hollow glass globe, with the candy, gum and trinkets plainly visible, and promiscuously mingled. With the insertion of a coin and the turn of a crank, the purchase pours from the bowl by gravity into a receptacle open to the vendee. Each delivery of candy comprises 8 to 10 pieces, usually with one or more trinkets, while a delivery of gum consists of one gum ball with or without a trinket. In random samples it was found that to a quart of candy there were 840 peanuts and 21 trinkets, and a similar measure from the gum machine produced 225 pieces of gum with 65 trinkets.

■ The candy and gum were shipped into Norfolk, Virginia, from Chicago, Illinois, and the trinkets from Dallas, Texas, but they were not mixed until placed in the machines in Norfolk, where they were seized. We think there can be no doubt that the mixture dispensed by each of the machines is within the interstate commerce sweep of the Act, section 304 (a), 21 U.S.C.A. § 334(a), as "held for sale (whether or not the first sale) after shipment in interstate commerce". United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297. Hence we go to the merits immediately.

Under the Act food is defined to be "(1) articles used for food or drink for man or other animals, (2) chewing gum, and (3) articles used for components of any such article". Sec. 201(f), 21 U.S.C.A. § 321(f). A food is declared to be adulterated by section 402, 21 U.S.C.A. § 342, under the following conditions, among others:

402(a)(1): "If it bears or contains any poisonous or deleterious substance which may render it injurious to health; * *".

(d): "If it is confectionary, and it bears or contains any alchohol or non-nutritive article or substance * * *."

The contention of the owner is that neither the candy nor the gum, admittedly food in themselves, "contains" the trinkets, that the trinkets are in no sense ingredients of the sweets, but physically separate as lures to prospective purchasers of the candy and gum, and that the candy and gum have within them no deleterious or non-nutritive substances.

■ The Court is of the opinion that the indiscriminate confusion of the trinkets and candy, and trinkets and gum, especially in the low ratio of the trinkets, results in an indistinguishable mass of "food", and in this condition it is certain that these articles of food do contain the trinkets, within the intent and purpose of the Act. Obviously the trinkets are deleterious and non-nutritive substances. Except in the boots and lapel-pins, the color, design and intermixture of the trinkets so merge them with the candy and gum as to make them appear, certainly to the juvenile observer, as constituents and components of the store of candy and gum. A glance into the hopper of the slot machine might not distinguish the trinkets as alien substances but simply as another sweetmeat. That the whole contents are edible might well be assumed. In this intimate association we think the candy and the gum "contains"

492

the trinkets, and in this manner the candy and gum have become adulterated.

There are thus offered "articles used for food" potentially injurious to the consumer and against which the Act would protect the public. While the trinkets are not edible, they are easily aspirated and readily swallowed. Customers of these slot machines are the neighborhood children, and the case against the gum, candy and trinkets becomes stronger when we consider the imprudence and heedlessness of these penny-patrons—never too discerning in munching tidbits.

United States v. Lexington Mill Co., 232 U.S. 399, 34 S.Ct. 337, 58 L.Ed. 658, does not preclude our holding—that in the Act "contains" may mean "associated with" and not exclusively "incorporated in", and that "food" is not referrable only to a unit but includes a serving or portion of units offered for consumption. The English decision therein approved declared that the resulting blend must be detrimental to health; that it was not sufficient that a single ingredient was by itself an injurious element if not so in the combination. The facts there disclosed no confounding, as here, of the good and bad in such a way as to retain the full efficacy of the latter, without dilution to any degree. Nor was there a resemblance in the two, to let the uneatable pass as eatable.

The case having been submitted without a jury, the Court makes this memorandum as its findings of fact and conclusions of law, and will enter an order granting condemnation in accordance with the prayer of the libel.