**Steve J. GADLER, Plaintiff,**

v.

**UNITED STATES of America and David Mathews, Secretary of Health, Education and Welfare, Defendants.**

**No. 3–77 Civ. 27.**

United States District Court,
D. Minnesota,
Third Division.

Jan. 26, 1977.

Philip W. Getts, Dayton, Herman & Graham, Minneapolis, Minn., for plaintiff.

Robert G. Renner, U. S. Atty. by Daniel M. Scott, Asst. U. S. Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM ORDER

ALSOP, District Judge.

This matter comes before the court on plaintiff's motion for a preliminary injunction to restrain defendants, their successors, employees, agents and attorneys and all others acting in concert with them from barring plaintiff's importation of Laetrile [1] solely for his personal use.

Plaintiff is an individual who has been examined by Vernon D. E. Smith, M.D., and Irving J. Lerner, M.D., who concluded that plaintiff was suffering from lymphoma, a form of cancer. Dr. Lerner recommended chemotherapy for the treatment of plaintiff's illness. In January, 1976, plaintiff began a program of chemotherapy treatments. After plaintiff had received two treatments of a series scheduled by Dr.

---

1. Laetrile is a product also known variously as amygdalin and "Vitamin B-17."

Lerner, plaintiff discontinued chemotherapy and travelled to Mexico for the further care and treatment of his disease. There employees at the Centro Medico del Mar examined plaintiff, and Dr. Ernesto Contreras, M.D., director of the Centro Medico del Mar and a physician licensed to practice in Mexico, prescribed daily dosages of Laetrile for the treatment of plaintiff's disease. Plaintiff has continued the regimen prescribed by Dr. Contreras and intends to travel to Mexico for a second physical examination and to purchase a new supply of Laetrile. He seeks a preliminary injunction restraining defendants from barring his importation of Laetrile solely for personal use in treating his condition.

Defendants are the United States and the Secretary of Health, Education and Welfare, who is responsible for the enforcement and administration of the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* They have taken the position that Laetrile is a "new drug" within the meaning of 21 U.S.C. § 321(p)[2] and that plaintiff's proposed conduct is unlawful under 21 U.S.C. § 355(a) because the Food and Drug Administration ("FDA") has not approved a new drug application with respect to the drug.[3]

Plaintiff does not deny that there is no approved new drug application with respect to Laetrile. He argues, however, that Laetrile is not a "new drug" within the meaning of the Act and that, even if Laetrile is a "new drug" within the meaning of the Act, any prohibition on its importation by an individual for his personal use is unconstitutional as a denial of due process and of his right to privacy.

In order to justify the issuance of a preliminary injunction, the moving party has the burden of showing substantial probability of success at trial and irreparable injury to the moving party absent such issuance. *Minnesota Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973); *accord, Missouri Portland Cement Co. v. H. K. Porter Co.*, 535 F.2d 388, 392 (8th Cir. 1976). Thus, plaintiff's right to a preliminary injunction is dependent on his showing of a substantial probability of success concerning his claim that the importation of Laetrile for his personal use is not prohibited by the Food, Drug and Cosmetic Act or that, if it is so prohibited, such a prohibition is unconstitutional.

It is clear that Laetrile is a "drug" within the meaning of the Food, Drug and Cosmetic Act. The word "drug" is defined in 21 U.S.C. § 321(g)(1)(B) to include:

> articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals. . .

Thus, it is the *intended* use of an article which determines whether or not it is a "drug," and even the most commonly ingested foods and liquids are "drugs" within the meaning of the Act if their intended use falls within the definition of § 321(g)(1)(B). *See, e. g., Kordel v. United States*, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948) (compounds of minerals, vitamins and herbs); *Seven Cases v. United States*, 239 U.S. 510, 36 S.Ct. 190, 60 L.Ed. 411 (1916) (alcohol solution); *United States v. Millpax, Inc.*, 313 F.2d 152 (7th Cir.), *cert. denied*, 373

---

2. 21 U.S.C. § 321(p) provides:
The term "new drug" means—
(1) Any drug . . . the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a "new drug" if at any time prior to the enactment of this Act [June 25, 1938] it was subject to the Food and Drugs Act of June 30,

1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use; or
(2) Any drug . . . the composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions.

3. The parties have stipulated that no new drug application has been approved.

U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 198 (1963) ("iron tonic"); *United States v. Hohensee,* 243 F.2d 367 (3d Cir.), *cert. denied,* 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136 (1957) ("health foods"); *Bradley v. United States,* 264 F. 79 (5th Cir. 1920) (mineral water); *United States v. Vitasafe Formula M,* 226 F.Supp. 266 (D.N.J.1964), *remanded on other grounds,* 345 F.2d 864 (3d Cir.), *cert. denied,* 382 U.S. 918, 86 S.Ct. 290, 15 L.Ed.2d 232 (1965) (vitamin and mineral capsules); *United States v. 250 Jars,* 218 F.Supp. 208 (E.D.Mich.1963), *aff'd,* 344 F.2d 288 (6th Cir. 1965) (honey); *United States v. 46 Cartons,* 113 F.Supp. 336 (D.N.J.1953) (cigarettes).

Although plaintiff claims that he does not consider Laetrile to be a drug but a vitamin or a nutritional supplement, in the context of the Food, Drug, and Cosmetic Act it is a "drug" nevertheless. In his complaint and by affidavit plaintiff states that the Laetrile which he seeks to import is to be used for the care and treatment of his cancerous condition. It is, therefore, a "drug," as defined by 21 U.S.C. § 321(g)(1)(B), because it unquestionably is intended for the cure and treatment of a disease in man.

█ Plaintiff has failed to demonstrate a substantial probability of success with respect to his claim that Laetrile is not a "new drug" within the meaning of 21 U.S.C. § 321(p). In order to prevail on his claim that Laetrile is not a "new drug," plaintiff. must establish (1) that Laetrile is generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions in which its use is proposed, (2) that Laetrile had been used in the United States prior to 1938 *and* that Laetrile's labeling contained the same representations concerning the conditions of its use at that time as it does now or (3) that Laetrile was marketed before 1962 for exactly the same uses for which it is presently intended *and*

that Laetrile was generally recognized by qualified experts as safe for those uses.

The court is aware that plaintiff initiated this action without the benefit of legal assistance [4] and that this matter was set for hearing on relatively short notice.[5] The court is, therefore, disposed to give the broadest possible import to the limited showing submitted in support of plaintiff's position. However, there is nothing presently before the court which demonstrates a substantial probability of success on the merits.

Plaintiff has presented no evidence to show that there is a substantial probability that he will succeed in establishing that Laetrile is generally recognized as safe and effective for the treatment of cancer by experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs. In fact, the only evidence bearing upon this issue is the evidence submitted by defendants, and that evidence is to the effect that Laetrile is *not* so recognized.

The only evidence presented to establish that Laetrile is exempt pursuant to the "grandfather" clause of 21 U.S.C. § 321(p)(1) consists of a single reference in an exhibit to an affidavit submitted by defendants. That exhibit contains a statement that Ernst T. Krebs, Sr., M.D., claimed to have first used Laetrile shortly after 1920 in his treatment of far-advanced cancer patients. The evidence in that exhibit is wholly insufficient to demonstrate that the exemption applies because that exhibit goes on to state that the Laetrile used in the 1920's was "too toxic" for general use and that only in 1952 had a reportedly "safe" formula been developed by E. T. Krebs, Jr. In short, even if the court were to conclude that there was a substantial probability that plaintiff could show that prior to the enactment of 21 U.S.C. § 321(p) in 1938 Laetrile had been a drug subject to

---

**4.** Plaintiff apparently retained counsel a day or two prior to the hearing on this motion.

**5.** Plaintiff filed his complaint on January 13, 1977, and a hearing was scheduled for January

20, 1977. Plaintiff states that he intends to travel to Mexico for an appointment scheduled for January 27, 1977.

the Food and Drug Act, the court would not be able to conclude that "at such time its labeling contained the same representations concerning the conditions of its use." The record is devoid of any basis for such a conclusion.

Finally, plaintiff has offered no evidence to demonstrate a substantial probability that he will succeed in establishing that Laetrile was marketed before 1962 for exactly the same uses for which plaintiff seeks to import it *and* that it was generally recognized by qualified experts as safe for those uses. The present record does contain assertions that Laetrile was marketed before 1962 and was used for the treatment of cancer at that time; however, there is no indication that any qualified expert recognized it as safe for such use.

The court concludes that plaintiff has failed to show a substantial probability that he will establish that Laetrile is not a "new drug." *See Rutherford v. United States,* 542 F.2d 1137 (10th Cir. 1976). In an earlier case decided in this District, Judge Larson decided that, based upon an evidentiary record more complete than the one before this court, there was no probability that two importers and distributors would succeed in establishing that Laetrile was not a "new drug." *Hanson v. United States,* 417 F.Supp. 30 (D.Minn.), *aff'd,* 540 F.2d 947 (8th Cir. 1976).

■ Furthermore, plaintiff has not shown a substantial probability of success with respect to his claim that 21 U.S.C. § 355(a) does not apply to his intended importation of Laetrile solely for his personal use. 21 U.S.C. § 355(a) provides in pertinent part:

No person shall introduce or deliver for introduction into interstate commerce · any new drug, unless an approval of an application . . . is effective with respect to such drug.

Although plaintiff suggests that, because the Food, Drug and Cosmetic Act is direct-

ed toward manufacturers and distributors, § 355(a) should not be applied to a person who intends to import a new drug solely for his personal use, the court is convinced that the statutory language is clear. The statute does not purport to apply only to manufacturers or distributors; it plainly states that *"no person* [6] shall introduce or deliver for introduction into interstate commerce any new drug. . . ." [emphasis and footnote added]

Likewise, the court is convinced that the purchase of Laetrile in Mexico and the subsequent transportation of that drug to Minnesota is an introduction of Laetrile into interstate commerce. 21 U.S.C. § 321(b) defines interstate commerce as "commerce between any State . . . and any place outside thereof. . . ." Thus, it is clear to the court that what plaintiff intends to do is within the scope of the prohibition of 21 U.S.C. § 355(a).

■ Furthermore, plaintiff has failed to demonstrate the substantial probability that he will succeed in establishing that the statutory scheme required to gain approval for Laetrile is unconstitutional. The court is concerned that the statutory scheme involved in gaining approval for a new drug application may involve costs which are so substantial as to cause plaintiff and persons similarly situated to forego compliance with 21 U.S.C. § 355(b). However, that scheme is constitutional as an exercise of Congress' power to set standards in order to protect the public from unsafe drugs, *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973), and it is clear that the statute does not require the FDA to approve or disapprove Laetrile in the absence of an application. *See Rutherford v. American Medical Ass'n,* 379 F.2d 641 (7th Cir. 1967), *cert. denied,* 389 U.S. 1043, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968).

Although the statutory scheme does not require the FDA to initiate proceedings to determine whether or not a drug is a "new

---

**6.** 21 U.S.C. § 321(e) provides: The term "person" includes individual, partnership, corporation, and association.

drug" or to approve or disapprove a "new drug" in the absence of an application, the present controversy amply demonstrates the shortcomings of the Act in that regard. The court is advised that the FDA, notwithstanding the absence of such a statutory procedure, has on its own motion initiated administrative hearings to develop a record upon which it can make such determinations as to Laetrile. The court is of the opinion that such determinations must of necessity be made first by persons equipped by education, training and experience in the field, rather than by courts. When they are afforded a full and complete record upon which to act, such persons are peculiarly suited to make the initial determinations as to whether or not Laetrile is a "new drug," is "grandfathered" or is "safe and effective." *Rutherford v. United States,* 542 F.2d 1137, 1144 (10th Cir. 1976); *see also Weinberger v. Bentex Pharmaceuticals,* 412 U.S. 645, 653, 93 S.Ct. 2448, 37 L.Ed.2d 235 (1973). This court chooses to refrain from making such determinations in the context of these proceedings.

Plaintiff has also failed to show a substantial probability that he will succeed in establishing his claim that the constitutional right of privacy protects his importation of Laetrile solely for personal use. The issue of an individual's right to *possess* Laetrile for his personal use is not now before the court; the issue of his right to *import* Laetrile is. *Compare Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) *with United States v. 37 Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). It is clear that the right to privacy does not protect the importation of items whose introduction into interstate commerce is proscribed by law. *See United States v. 37 Photographs, supra; but see Rutherford v. United States,* 399 F.Supp. 1208 (W.D.Okla.1975), *rev'd on other grounds,* 542 F.2d 1137 (10th Cir. 1976).

Because the court has determined that plaintiff has failed to establish a substantial probability of success on the merits based on the record now before the court, it is unnecessary that the court address the issue of whether or not plaintiff has shown irreparable injury.

This court makes no determination as to whether or not the Laetrile plaintiff seeks to import will be effective for the purposes for which he seeks it. By this order the court determines only that upon this record the relief plaintiff here seeks is not available under the law as this court understands it to exist at this time and in this forum.

Upon the foregoing,

IT IS ORDERED That plaintiff's motion for a preliminary injunction be, and the same hereby is, denied.