REQUESTED BY: Dear Senators Cullan and Wesely:
LB 382 has been introduced as a bill to authorize the sale, prescription and administration of Laetrile for the treatment of malignancy, disease, illness, or physical condition on the request of the patient. You have asked whether the Food and Drug Administration has authority to forbid the transportation of Laetrile in interstate commerce because, according to the Court in United States v.Rutherford, ___ U.S. ___, 61 L.Ed.2d 68 (1979), Laetrile has not met the standards of the Federal Food, Drug, and Cosmetic Act (the Act). We have concluded that it does as discussed below.
You have also asked whether materials needed to manufacture Laetrile may be legally imported into the State of Nebraska. We have concluded that they may not as discussed below.
You have also asked whether LB 382, if passed, would be `special legislation' proscribed by Article III, section 18
of the Nebraska Constitution.
We have concluded that it probably would not be because it appears to operate in the same manner upon all persons in like circumstances. See Bauer v. Game, Forestation Parks Commission, 138 Neb. 436, 293 N.W. 282 (1940).
The Act defines a `drug' to include articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or articles intended for use as a component of such articles. 21 U.S.C. § 321(g)(B) and (D). The intended use of a product is determined from its label, accompanying labeling, promotional claims, advertising, and any other relevant source. See Hanson v. UnitedStates, 417 F. Supp. 30 (D.Minn. 1976), affm'd., 540 F.2d 947
(8th Cir. 1976). In that case the tablets and vials of Laetrile at issue were held to be `drugs' within the meaning of the Act. In Millet, Pit and Seed Co., Inc. v. UnitedStates, 436 F. Supp. 84 (E.D.Tenn. 1977), apricot pits sold with no claim that they were for use in diagnosis, cure, mitigation, treatment or prevention of disease were found not to be a `drug' under the Act. In United States v. Articlesof Food and Drug, 444 F. Supp. 266 (E.D.Wis. 1978), the defendants had produced crude amygdalin (Laetrile) in various forms at its plant in Wisconsin from raw materials shipped in interstate commerce. They then sold, shipped, and held for sale after shipment in interstate commerce amygdalin in various forms, including ground defatted apricot kernels, powdered, tableted, and injectables, and the components thereof. The amygdalin produced and sold by defendants was intended for use in the cure, mitigation, palliation, treatment and prevention of various forms of human cancer. The court concluded that the amygdalin was a `drug' within the meaning of the Act.
The Act defines a `new drug' to include any drug not generally recognized among experts as `safe and effective for use.' 21 U.S.C. § 321(p)(1). The Court in UnitedStates v. Rutherford, U.S. (1979), recognized that the Commissioner of the Food and Drug Administration had determined that Laetrile was a new drug which was not exempt from premarketing approval under either the 1938 or 1962 grandfather provisions and that the district court had approved these findings except with regard to the 1962 exemption. It noted that on appeal, the circuit court had held that the safety and effectiveness terms used in the statute had no reasonable application to terminally ill cancer patients. The Supreme Court disagreed. It held that there was no exception for drugs to be used for such patients.
The Act provides that `[n]o person shall introduce or deliver for introduction into interstate commerce any new drug' unless an application under 21 U.S.C. § 355 has been approved except for certain investigational use by qualified experts.
The Act defines `interstate commerce' to include commerce between any state and any place outside of that state.21 U.S.C. § 321(b). In United States v. Sullivan,332 U.S. 689 (1948), the Court found that the purpose of the Act was `to safeguard the consumer by applying the Act to articles from the moment of their introduction into interstate commerce all the way to the moment of their delivery to the ultimate consumer.' It held that Congress had constitutional power under the commerce clause `to regulate the branding of articles that have completed an interstate shipment and are being held for future sales in purely local or intrastate commerce.' It found that a pharmacist had violated the act by repackaging, without labeling required by the Act, a drug he had purchased from a wholesaler in his state seven months after that wholesaler had received it in interstate commerce.
In United States v. A Quantity of Candy ContainingTrinkets, 95 F. Supp. 490 (E.D.Va. 1951), a vending machine in Norfolk, Virginia, contained candy and gum shipped from Chicago and trinkets shipped from Dallas. The court held the mixture dispensed by the machine was within the interstate commerce sweep of the Act as `held for sale (whether or not the first sale) after shipment in interstate commerce.'
United States v. Sanders, 196 F.2d 895 (10th Cir. 1952), was a proceeding to show cause why defendant should not be prosecuted for criminal contempt for violation of an injunction restraining him from directly or indirectly introducing or delivering or causing to be introduced or delivered a drug which was misbranded within the meaning of the Act. Defendant claimed he was not violating the injunction because he had stopped using runners or drummers who went into other states to solicit orders for the drug. Instead he made all his sales from his place of business in the State of Oklahoma. The court held he was guilty of violation of the Act because he knowingly and regularly sold misbranded drugs and delivered them, knowing that they were purchased for transportation in interstate commerce, and he solicited customers to return for future purchases and deliveries. Although he was not engaged in interstate commerce with respect to the drug, he was engaged in delivering such a drug for introduction into interstate commerce. This was a violation of the injunction.
In Gadler v. United States, 425 F. Supp. 244 (D.Minn. 1977), Gadler had been diagnosed as having a form of cancer. He wanted to go to Mexico and bring some Laetrile back for his own use. He sought a preliminary injunction to restrain the defendants from barring his importation of Laetrile solely for his personal use. The court denied the injunction. It was convinced his proposed action would be a violation of the Act which applied to `person,' a term covering an individual as well as a manufacturer or distributor.