Glen L. **RUTHERFORD, Plaintiff Intervenor-Appellee,**

**and**

**Jimmie Stowe and Gene Schneider, Individually and on behalf of a class composed of cancer victims and their spouses, who are responsible for the cost of treatment, Original Plaintiffs-Appellees,**

v.

**UNITED STATES of America and David Mathews, Secretary of Health, Education and Welfare, Defendants-Appellants.**

No. 75–1725.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 30, 1976.

Decided Oct. 12, 1976.

Burton J. Johnson, Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl. (Osborne M. Reynolds, Jr., Professor of Law, University of Oklahoma College of Law, Norman, Okl., on the brief), for plaintiffs-appellees.

Barry Grossman, Atty., Dept. of Justice (Richard A. Merrill, Chief Counsel, Rockville, Md., and J. H. Geller, Associate Chief Counsel, Food and Drug Div., Dept. of Health, Education and Welfare, Washington, D. C., of counsel; John E. Green, Acting U. S. Atty., and William S. Price, Asst. U. S. Atty., Oklahoma City, Okl., Thomas E. Kauper, Asst. Atty. Gen., and Carl D. Lawson and Catherine G. O'Sullivan, Attys., Dept. of Justice, Washington, D. C., on the brief), for defendants-appellants.

Before HOLLOWAY, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The Department of Health, Education and Welfare here seeks review and reversal of a judgment of the District Court for the Western District of Oklahoma which temporarily enjoined the Department, and particularly the Food and Drug Administration, from preventing appellee Rutherford from obtaining a supply of a controversial cancer drug called Laetrile for his own use. An order was issued on behalf of Rutherford which allowed him to purchase and transport in commerce a six months' supply of Laetrile and accompanying drugs. In the course of this order the trial court found that Laetrile was not toxic and further found that if properly administered it would "effect relief from cancer disease to the satisfaction of many who are privileged to use the same." The court also ruled that the FDA was required under the law to approve or disapprove Laetrile as a cancer treatment and that it had neglected its duty in this regard. The judge also held that the new drug application requirements contained in the Food and Drug Act, Section 505(b), 21 U.S.C. Section 355(b), violated the Fifth Amendment due process clause in that they prescribed expensive procedures which could not be carried out by persons in the position of Rutherford.[1]

The government seeks reversal on statutory grounds:

First, that it (FDA) has no duty to approve a new drug unless a so-called new drug application is submitted to it.

Second, that it is not empowered to determine the safety and efficiency of Laetrile.

Third, that the court exceeded its authority in issuing the injunction, the effect of which was to block the enforcement of an Act of Congress without convening a three-judge court, 28 U.S.C. Sections 2282 and 2284.

We need not review the judge's ruling that Laetrile is an effective treatment for

1. The suit was initially brought as an individual action only by a cancer patient, Juanita Stowe, and her husband on March 12, 1975. Judge Daugherty heard and denied Mrs. Stowe's request for a preliminary injunction allowing her to obtain Laetrile on March 14, 1975. Mrs. Stowe subsequently died. An amended complaint was filed June 30, 1975 by two other cancer patients, Rutherford and Phyllis Schneider, and Mrs. Schneider's husband, on behalf of cancer victims and their spouses. Mrs. Schneider died before the hearing on a preliminary injunction held July 11 and 18, 1975, before Judge Bohanon. There has been no certification of the lawsuit as a class action.

cancer or that Laetrile is not toxic or that the new drug application provision is unconstitutional. We confine ourselves to the issue whether the so-called new drug procedure constitutes, as H.E.W. contends, the only legal route that is available for testing the drug for harmfulness or harmlessness. So considered, we are of the opinion that the question whether this is a new drug presents a mixed question of fact and law which should be fully tried. As it is, the FDA's record is grossly inadequate and consists merely of a conclusory affidavit of an official of the FDA which in effect declares that it is a new drug because the FDA says it is and thus is subject to all of the statutory vagaries of such a designation.

## I.

As we view it, the reason that the Food and Drug Administration is anxious to classify Laetrile as a new drug is so as to bring it within the new drug certification procedures of the Food, Drug and Cosmetics Act. Section 505(a) of the Act, 21 U.S.C. Section 355(a). This provision bars the introduction into interstate commerce of a new drug without an approved new drug application having been filed pursuant to the Act just cited. The Secretary is required to review the application within a specified period on the criteria of safety and effectiveness as demonstrated by "adequate and well-controlled investigations." Such an application is reviewable directly in the court of appeals. The plaintiff-appellee's position on this is that Laetrile escapes the clutches of this Act by being a food rather than a drug, or even if it is a drug it is not a new drug.

## A.

■ It is unnecessary to linger and dwell on the subject whether it is a food or a drug inasmuch as this is not determinative. Ap-

pellee argues that it is in the nature of a diet supplement or a vitamin, but the cases recognize that even if a substance is also a food it may be subjected to the requirements of the Act if it is used in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animals.[2] Intended use is an important aspect in the determination whether it is a drug. *See Hanson v. United States,* 417 F.Supp. 30 (D.Minn.1976).

Unquestionably Laetrile is *intended* at least as a treatment for cancer, so the likelihood that Rutherford can demonstrate that it is not a drug at all appears slim. Hence if this were the only issue to sustain the injunction it would be unnecessary to proceed further.

## B.

### THE QUESTION WHETHER LAETRILE IS A NEW DRUG

■ Rutherford vigorously argues that even if it is a drug it is not a new one, and therefore, it is exempt from the thicket which results from seeking to comply with Section 505(a) of the Act. A new drug is defined in Section 201(p) of the Act, 21 U.S.C. Section 321(p) as follows:

(p) The term "new drug" means—

(1) Any drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a "new drug" if at any time prior to the

2. *Kordell v. United States,* 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948) (mixture of minerals, vitamins, and herbs); *Seven Cases v. United States,* 239 U.S. 510, 518, 36 S.Ct. 190, 60 L.Ed. 411 (1916) (alcoholic solution); *United States v. Allan Drug Corp.,* 357 F.2d 713 (10th Cir.), *cert. denied,* 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 131 (1966) (vitamin supplements of-

fered as acne cure); *United States v. Millpax, Inc.,* 313 F.2d 152, 153–54 (7th Cir. 1963), *cert. denied,* 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 198 (1963) ("iron tonic"); *United States v. 250 Jars of U. S. Fancy Pure Honey,* 218 F.Supp. 208 (E.D.Mich.1963), *aff'd,* 344 F.2d 288 (6th Cir. 1965) (honey sold for therapeutic purposes).

enactment of this chapter it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use; or

(2) Any drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions.

Essentially, then, a new drug is a substance which may or may not be generally recognized by scientific experts as safe and effective for use under the conditions prescribed, recommended or suggested in the labeling thereof. A substance is not regarded as a new drug if at any time prior to 1962, the date of the New Drug Amendment in question, it was subject to the Act of June 30, 1906, as amended. The effect of this definition is that there is a twofold grandfather clause exemption which is capable of removing Laetrile from the new drug category even if it is not recognized by the experts as being safe and effective which, by the way, does not say that it is unsafe and ineffective. The first of these grandfather exemptions comes from transitional provisions attached to the 1962 Amendments to the Food, Drug and Cosmetic Act of 1938. The second grandfather exemption arises from provisions attached to the 1938 Act when it superseded the original Food and Drug Act of 1906.

1. Whether the Transitional Provisions Between the 1938 and 1962 Acts Applies

Prior to the 1962 Amendment the only prerequisite for a drug to avoid classification as a new drug was recognition that it was safe. But the 1962 Amendment added the requirement of "effectiveness." *See* Act of October 10, 1962, Pub.L. 87–781,

Section 102(a)(1). One of the transitional provisions enacted in 1962 was as follows:

In the case of any drug which, on the day immediately preceding the enactment date (October 10, 1962), (A) was commercially used or sold in the United States, (B) was not a new drug as defined by section 201(p) of the basic Act as then in force (21 U.S.C. Section 321(p)), and (C) was not covered by an effective (new drug) application under 505 of that Act (21 U.S.C. Section 355), the amendments to section 201(p) made by this Act shall not apply to such drug when intended solely for use under conditions prescribed, recommended, or suggested in labeling with respect to such drug on that day. Pub.L. 87–781, Section 107(c)(4), *reprinted at* 21 U.S.C. Section 321 *note*.

The effect of this is that if on October 9, 1962, Laetrile was "marketed before 1962 for exactly the same uses for which it is presently being sold and was generally recognized by qualified experts as safe for those uses, it is exempt under this grandfather clause from the test of general recognition by experts as being both safe and *effective* for its claimed uses." *Tyler Pharmacal Distributors, Inc. v. United States Dep't of HEW*, 408 F.2d 95, 99 (7th Cir. 1969). *See also United States v. Allan Drug Corp.*, 357 F.2d 713, 717 (10th Cir.), *cert. denied*, 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 131 (1966). The present record does not reveal how Laetrile was marketed before the passage of the 1962 Amendment nor does it tell us whether it was recognized as safe. We are mindful, of course, that the cause was not tried on its merits and hence these questions were not considered on preliminary injunction. They should, however, be taken up when the cause is remanded.

2. Whether the Other Transitional Provision as Between the 1906 and 1938 Acts Applies

In essence this exemption provides that a drug not recognized by qualified experts as "safe and effective"

shall not be deemed to be a "new drug" if at any time prior to the enactment of this

chapter (the 1938 Act) it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use.

21 U.S.C. Section 321(p)(1).

The effect of this above quoted provision is to exempt from the new drug classification any drug which was marketed before the Food, Drug and Cosmetic Act of 1938 was enacted and which was covered by the predecessor Act, that is, the Food and Drugs Act of 1906 (as long as the prescribed conditions for its use are unchanged).[3]

■ The 1906 Act covered all substances which were recognized or used as drugs at that time. Its wide coverage is apparent from its language:

> all medicines and preparations recognized in the United States Pharmacopoeia or National Formulary for internal or external use, and any substance or mixture of substances intended to be used for the cure, mitigation, or prevention of disease of either men or other animals.

> Act of June 30, 1906, c. 3915 Section 6, 34 Stat. 769.

Under the second grandfather clause which is quoted above, a drug may escape the "new drug" machinery if it was marketed or officially recognized as a drug at any time before June 25, 1938, but after June 30, 1906. So if Laetrile was marketed or officially recognized as a cancer drug it would not have to be subjected to the instrumentalities which exist for new drugs under the 1962 Amendments even though it is not generally recognized as safe or effective.[4]

## II.

## SUMMARY OF REMAINING QUESTIONS

■ From what we have said above there remain some questions to be determined. These are:

(1) Was Laetrile marketed on October 9, 1962, as a cancer drug and was it then generally recognized as "safe?"[5]

(2) Was Laetrile recognized or used as a cancer drug under the same conditions of present use during the period when the Food and Drugs Act of 1906 was in effect, June 30, 1906 to June 25, 1938?

If the answer to either of these is "yes," Laetrile would be exempt as a "new drug" under the Food, Drug and Cosmetic Act. We regard these questions as substantial,

---

3. *See Weinberger v. Hynson, Westcott and Dunning, Inc.*, 412 U.S. 609, 634, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973).

4. We do not wish to convey that Laetrile could be marketed if it was found to be toxic or otherwise harmful, for even if Laetrile is not a "new drug," it is a drug subject to the prohibitions of Section 301 of the Act, 21 U.S.C. Section 331(a), and this provision makes unlawful "The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded." A drug is "misbranded" if "it is dangerous to health when used in the dosage, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof." Section 502(j) of the Act, 21 U.S.C. Section 352(j).

So, even though the drug is grandfathered it may still be excluded as dangerous to health. The difference between unsafe and dangerous is not great. It might be judged in accordance with scientific viewpoints as of different dates. Thus the Section 502(j) standard would look to the current assessments of safety.

Our reading of this second grandfather clause is in accord with the transitional provision of the 1962 Amendments, *supra*, which exempts from new drug status any drug "not a new drug as defined by section 201(p) of the basic Act then in force." P.Law 87–781, Section 107(c)(4)(B).

5. The FDA argues that a drug offered for use in a life-threatening disease that is not "effective" is thereby not "safe" either. Thus even under the pre-1962 law Laetrile would have to satisfy effectiveness criteria. This argument may lose its force in the case of a terminally-ill patient or in the case of a patient suffering from a disease for which there are in fact no "effective" remedies. Compare *Duvoric v. Richardson*, 479 F.2d 242 (7th Cir.), *cert. denied*, 414 U.S. 944, 94 S.Ct. 232, 38 L.Ed.2d 168 (1973). *See also CIBA v. Weinberger*, 412 U.S. 640, 660 n.2, 93 S.Ct. 2495, 37 L.Ed.2d 230 (1973). In any case, this argument should be considered in the first instance in the further proceedings in this matter; the issue is not before us for resolution.

difficult and doubtful so as to support the granting of a preliminary injunction.

The FDA has argued that they have not issued any regulation or rule which specifically or positively forbids the administration of Laetrile. This is true. However, the FDA has made an administrative determination that Laetrile is a new drug and this places the plaintiff in a position in which he has to admit that it is a new drug in order to get the FDA to move. As a result he could not be heard to say that they have not effectively stymied the use of this drug. The FDA has done this without citing any facts whatsoever, merely a conclusion, and this is the kind of declaratory order that was before the Court in *Weinberger v. Hynson, Wescott & Dunning, Inc.,* 412 U.S. 609, 625–27, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973). There the Court upheld the FDA's power to declare that a substance is a "new drug" under the Act, but also held that an order of this kind is reviewable by a district court. 412 U.S. at 609, 93 S.Ct. 2469. In view of the dearth of evidence in support of the FDA's determination, it was entirely proper for the trial court to entertain this case.

■ From what has been said it is obvious that we are not in agreement with the trial court's opinion that the FDA has to approve or disapprove any new drug even in the absence of an application that satisfies the statutory mandate. As we have noted, Section 505(b) of the Act specifically requires the filing of a new application by the proponent of a new drug. The FDA simply rules on the application as submitted.[6] Congress in writing Section 505(b) was relying on the ability and willingness of the pharmaceutical companies to present new drugs. It follows that the FDA was not compelled to pursue this new drug procedure in the Laetrile situation in the absence of an application. *See Rutherford v. American Medical Ass'n,* 379 F.2d 641 (7th Cir. 1967), *cert. denied,* 389 U.S. 1043, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968) (no FDA duty to initiate approval procedures for Krebiozen).

■ We are unable, however, to see how the FDA can escape the obligation of producing an administrative record to support its determination of the first and more fundamental issue that Laetrile is a *new* drug, for it is not a new drug merely because they say it is. Moreover, such a conclusory ruling precludes effective review under 5 U.S.C. Section 706(2). *Cf. Weinberger v. Hynson, Wescott & Dunning, Inc., supra,* which holds the new drug decision by way of 5 U.S.C. Section 554(e) to be reviewable in a district court. To support its determination the FDA in the case at bar would have to present substantial evidence to support the proposition that Laetrile is not generally recognized among qualified experts as "safe and effective," and that Laetrile is not grandfathered by either of the exemptions discussed above.

■ It seems doubtful that the FDA has in fact developed an administrative record adequate under 5 U.S.C. Section 554(c) and hence there is probably nothing which is presently available for a court to review. Nothing in the record suggests that the FDA has dealt with Laetrile in a rule-making proceeding under Section 701 of the Act, 21 U.S.C. Section 371. *Compare National Nutritional Foods Ass'n v. Weinberger,* 512 F.2d 688 (2d Cir. 1975). Hence, if this is true the appropriate procedure for the district court is to remand the case back to the FDA for proceedings adequate to develop a record supportive of the agency's determination; the proceedings should give Laetrile proponents an opportunity to express their views. This is a result which is

---

6. *See* H.R.Rep. No. 2139, 75th Cong., 3d Sess. (April 14, 1938) at 9:

This provision (Section 505) will not put the Federal Government into the business of developing new drugs, nor will it require the Government to duplicate laboratory and clinical tests made by responsible manufacturers. The provision merely sets up a method for the authoritative review of the manufacturer's tests and will not unreasonably delay the introduction of new drugs in the market. It provides for court review of the decisions of the administrative agency adverse to the manufacturer.

*See also* H.R.Rep. No. 2464, 87th Cong., 2d Sess. (September 22, 1963) at 3.

also supported by the Supreme Court decision in *Weinberger v. Bentex Pharmaceuticals*, 412 U.S. 645, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973). There the district court faced with a similar problem referred the matter to the FDA for initial determination. *See* 412 U.S. at 652–54, 93 S.Ct. 2488. The question whether the drug is to be recognized as "safe and effective" or was "grandfathered in" are "the kinds of issues peculiarly suited to initial determination by the FDA." *Id.* at 653, 93 S.Ct. at 2494.

It seems obvious that there cannot be a court review unless there is a decent record made. We see no need to consider the constitutional issues which were cited by the district court nor do we regard the convening of a three-judge court to be necessary. The district court's injunction can continue in effect pursuant to 5 U.S.C. Section 705.

We conclude that the preliminary injunction granted by the district court in this case should be and the same is upheld. At the same time, the cause is remanded for further proceedings consistent with the views expressed herein.

McWILLIAMS, Circuit Judge (dissenting).

I respectfully dissent and would vacate the judgment and order of the trial court. The judgment and order of the trial court enjoined the Secretary and his representatives "from preventing the plaintiff Glen L. Rutherford from purchasing and moving in interstate commerce, and having for his own personal use, not for sale, barter or to be given away to any other person an amount not in excess of six-months' supply of Vitamin B17 or laetrile, . . . ." That, as I understand it, was the extent of the judgment and order here complained of. In my view such injunctive order was improvidently entered and on appeal should be vacated.