Joseph RIZZO, a/k/a Giuseppe
Rizzo, Plaintiff,

v.

UNITED STATES of America and Joseph
A. Califano, Secretary of Health, Edu-
cation and Welfare, Defendants.

No. 77C644.

United States District Court,
E. D. New York.

April 7, 1977.

Glabman, Rubenstein, Rheingold & Rothbart by Morris Rubenstein, Brooklyn, N.Y., for plaintiff Rizzo.

David G. Trager, U.S. Atty., E.D.N.Y. by Carl I. Stewart, Asst. U.S. Atty., Brooklyn, N.Y., for defendants.

COSTANTINO, District Judge.

This action was commenced by an order to show cause requesting injunctive relief.

Plaintiff is dying from cancer of the pancreas. His physician has testified that this cancer is not susceptible to any treatment available in the United States and that in his estimation plaintiff has three to four months to live. As a result plaintiff wishes to have his physician administer to him a substance known as B17/Laetrile (hereinafter Laetrile). Laetrile is apparently used widely in Mexico as well as twenty five other countries in the treatment of cancer. *See Rutherford v. United States*, 399 F.Supp. 1208, 1210 (W.D.Okl.), *aff'd*, 542 F.2d 1137 (10th Cir. 1976). Laetrile, however, is not available in the United States, as a result of its classification by the Food and Drug Administration (hereinafter FDA) as a "new drug" pursuant to 21 U.S.C. § 321(p)(1). Under the provisions of 21 U.S.C. § 355(a) a "new drug" cannot be transported in interstate commerce unless the FDA has approved an application therefor. Apparently no application for approval has yet been filed.

■ Plaintiff is therefore seeking an injunction prohibiting the FDA from preventing plaintiff's importation or interstate transportation of Laetrile for purposes of his own consumption. To succeed in his motion for a preliminary injunction plaintiff must demonstrate possible irreparable

injury *and* (1) either likelihood of success on the law and facts then available, or (2) serious questions on the merits making them fair grounds for litigation, as well as a balance of the equities weighing decidedly in favor of preliminary injunctive relief. *Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247 (2d Cir. 1973); *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356 (2d Cir. 1976).

■ The second prong of the test provides an appropriate basis for the resolution of the preliminary injunction question presented in this case. Therefore, plaintiff is entitled to the relief sought if (1) he has presented serious questions going to the merits making them fair grounds for litigation, (2) a balance of the equities tips decidedly in favor of injunctive relief, and (3) if he will suffer possible irreparable injury if injunctive relief is not granted.[1]

The court's function at this stage is therefore limited to an examination of these three issues; it is not necessary, and certainly not appropriate at this stage of the proceedings to make a final determination of the merits.

## I. HAS PLAINTIFF RAISED SUFFICIENTLY SERIOUS QUESTIONS GOING TO THE MERITS TO MAKE THEM FAIR GROUNDS FOR LITIGATION?

Plaintiff's challenge to the ban on Laetrile is based upon statutory as well as constitutional grounds.

### A. Statutory Grounds

The statutory objection relates to the alleged failure of the FDA to develop a record in support of its classification of Laetrile as a "new drug." That this argument raises serious questions on the merits making them fair grounds for litigation is illustrated by the decision of the United States Court of Appeals for the 10th Circuit in *Rutherford v. United States*, 542 F.2d 1137

---

1. Plaintiff is entitled to injunctive relief under the second prong of the Sonesta test even if his ultimate success on the merits appears questionable. *Cf. Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438 at 444 (2d Cir. 1977).

(10th Cir. 1976). The court in *Rutherford* noted that an examination of the record developed by the FDA in support of its classification, revealed that

> [T]here remain some questions to be determined. These are:
>
> (1) Was Laetrile marketed on October 9, 1962, as a cancer drug and was it then generally recognized as "safe?"
>
> (2) Was Laetrile recognized or used as a cancer drug under the same conditions of present use during the period when the Food and Drugs Act of 1906 was in effect, June 30, 1906 to June 25, 1938?
>
> If the answer to either of these is "yes," Laetrile would be exempt as a "new drug" under the Food, Drug and Cosmetic Act. We regard these questions as substantial, difficult and doubtful . . ..

542 F.2d at 1142–1143.

As a result of its conclusion that the FDA has failed to develop an adequate administrative record in support of its classification of Laetrile as a "new drug," the Court of Appeals remanded to the District Court with the suggestion that the FDA be required to expand the administrative record. The FDA is presently undertaking this expansion of the record.

■ In light of the persuasive opinion of the Court of Appeals, it is concluded that plaintiff has raised statutory questions going to the merits sufficiently serious to make them fair grounds for litigation within the meaning of the *Sonesta* test.

### B. *Constitutional Grounds*

In addition to the statutory questions, plaintiff has raised serious constitutional questions going to the merits. The constitutional issues fall into two areas (1) plaintiff's right of self-determination as a facet of the right of privacy, and (2) lack of due process.

### 1. *Right of Privacy*

The ultimate determination of the right to privacy issue in this case will inevitably rest upon the balancing of the plaintiff's fundamental right to privacy against the government's compelling interest in regulating the use and distribution of this drug, *see Kramer v. Union Free School District*, 395 U.S. 621, 627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The parameters of an individual's right to self determination are not yet clearly defined. In *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1972) the Supreme Court explicitly recognized that the concept of personal liberty included a woman's right to terminate a pregnancy by means of abortion. The Court did note, however, that this right is not unlimited, and is subject to governmental regulation when questions of maintaining medical standards and protecting potential human life are involved. 410 U.S. 113, 155, 93 S.Ct. 705, 35 L.Ed.2d 147. Recently, the New Jersey Supreme Court recognized that the state's compelling interest in the regulation of medical treatment may weaken by comparison to the individual's right to privacy when a patient's prognosis for recovery is dim and standard medical treatment would require the use of extraordinary life-support systems to sustain the patient. *In re Quinlan*, 70 N.J. 10, 355 A.2d 647 (1976).

■ In light of the circumstances present in this case, the court concludes that the right to privacy issue is a sufficiently serious question making it fair grounds for litigation.

### 2. *Due Process*

■ Plaintiff also argues that the burden placed upon him by the FDA's interpretation of 21 U.S.C. § 355(a), and (b)[2], *viz.*, the filing and prosecution of a "new drug" application, constitutes a deprivation of life, liberty or property without due process of law. *See, United States Constitution, Amendment V, Rutherford v. United*

---

2. Essentially the FDA contends that as a "new drug", Laetrile cannot be acted upon unless an application for its use is filed.

*States*, 399 F.Supp. 1208 (W.D.Okl.1975), *aff'd on other grounds*, 542 F.2d 1137 (10th Cir. 1976). This question is also of sufficient seriousness to meet the requirement of the *Sonesta* test.

In summary, plaintiff has raised serious statutory and constitutional questions on the merits which individually and collectively are fair grounds for litigation.

## II. DO THE BALANCE OF THE EQUITIES TIP DECIDEDLY IN FAVOR OF INJUNCTIVE RELIEF?

█ It is not necessary to dwell on this aspect of the case at great length. It is clear that the balance of the equities tips dramatically in favor of injunctive relief. If plaintiff's position is ultimately upheld on the merits, he will find such a decision to be cold comfort to him if he is already deceased.

The FDA argues, however, that there is an equally weighty consideration which militates against the issuance of an injunction. More specifically, it is contended that the grant of a preliminary injunction may be harmful to the public as a whole since it will induce other cancer victims to abandon medically approved treatment in favor of Laetrile (which the FDA contends is a worthless treatment). As a result, the FDA argues that the introduction of Laetrile in this country would not be safe. This argument was accepted by the court in *Morgan v. Matthews*, 76–1637 (D, S.C. November 30, 1976). Whatever its significance may be in relation to the ultimate merits of this case, however, the court is not persuaded that such an argument is relevant to the inquiry at hand. It has been suggested that this argument is weak where a patient is terminally ill and "acceptable" medical treatment can offer no help. *Rutherford v. United States*, 542 F.2d 1137, 1142, fn. 5 (10th Cir. 1975); *accord, Carnahan v. United States*, Civ. No. 77–00101 (D.C.Cal. Jan. 21, 1977).

In any event, the inquiry in a preliminary injunction hearing is limited to the factors outlined in *Sonesta*. In this case, plaintiff's physician has indicated that in his opinion, plaintiff is dying and cannot be helped by "acceptable" medical treatment.[3] Both the physician and the plaintiff have further indicated that they are aware that Laetrile is an unproven remedy. Plaintiff wishes however to utilize it for whatever it may be worth. Under these circumstances the court believes that the balance of the equities tips decidedly in favor of relief.

## III. HAS PLAINTIFF DEMONSTRATED THE POSSIBILITY OF IRREPARABLE INJURY?

It appears obvious that plaintiff may suffer possible irreparable damage if the injunction is denied. That death is an irreparable injury is a fact that admits of little argument.

Although there is evidence that Laetrile is not an effective treatment for cancer,[4] medical history is replete with examples of cures which were not immediately recognized as effective. Furthermore, a government expert has conceded that psychological factors play an important role in the treatment of disease. In addition the government expert has testified—and the court accepts his testimony as true—that at this time there is only one "acceptable" treating agent for pancreatic cancer—Flourouracil. The fact that this drug is highly toxic is borne out by the manufacturer's brochure accompanying it:

> Flourouracil is a highly toxic drug with a narrow margin of safety. Therefore, patients should be carefully supervised since therapeutic response is unlikely to occur without some evidence of toxicity. Patients should be informed of expected toxic effects, particularly oral manifestations. White blood counts with differen-

3. The cases cited by the government which consider the ban on Laetrile in reference to drug distributors, *e. g., United States v. Gen'l Research Laboratories*, 397 F.Supp. 197 (C.D. Cal.1975), are not on point, involving as they do a vastly different balancing of the equities.

4. On the other hand there is no proof that normal doses of Laetrile are toxic. The ultimate determination of this case might be vastly different if such proof were present.

tial are recommended before each dose. Severe hematological toxicity, gastrointestinal hemorrhage and even death may result from the use of Flourouracil despite meticulous selection of patients and careful adjustment of dosage. Although severe toxicity is more likely in poor risk patients, fatalities may be encountered occasionally even in patients in relatively good condition.

The test in *Sonesta* is possible irreparable damage. The court takes judicial notice of the fact that medicine is not an exact science. In light of all the circumstances present in this case, the court concludes that plaintiff has shown possible irreparable damage.

### Conclusion

In light of the above discussion, the court concludes that plaintiff is entitled to preliminary injunctive relief. Accordingly, defendants will be enjoined from interfering with plaintiff's importation and transportation in interstate commerce for his own personal use an amount of Laetrile not to exceed a three month supply.

It is appropriate to re-emphasize the limited nature of the court's finding. The court is in no way condoning either the general importation or the widespread use of Laetrile. The court likewise makes no determination as to the efficacy of Laetrile in treatment of cancer. No implication as to the constitutionality of the involved statutes is intended by this decision. The sole conclusion which the court has reached is that plaintiff has demonstrated (1) serious questions going to the merits making them fair grounds for litigation, (2) a balance of the equities tipping decidedly in favor of injunctive relief, and (3) possible irreparable damage. No more and no less is intended by this opinion. The ultimate determination of the merits must await full trial.

Accordingly, plaintiff is directed to submit to the court a detailed affidavit from an attending physician duly licensed to practice medicine in the State of New York indicating the approximate dosage which must be given. After receiving such affidavit the court will file an order in accordance with this opinion.