UNITED STATES of America, Plaintiff-Appellee,

v.

An article of drug consisting of the following: 15866/50-Tablet Bottles, more or less, and 512/500-tablet bottles, more or less, labeled in part:

(bottle)

"Tutag Pharmaceuticals, Broomfield, Colorado * * * X–Otag Plus Tablets Each tablet contains: Orphenadrine citrate 50 mg., Acetaminophen 325 mg. Caution: Federal law prohibits dispensing without prescription * * *"

(Insert)

"X–OTAG PLUS TABLETS * * * 76/2 Tutag Pharmaceuticals, Inc., Broomfield, Colorado 80020"

and undetermined quantities of the aforesaid article labeled as aforesaid, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

TUTAG PHARMACEUTICALS, INC., a corporation, and Stanley J. Tutag, an Individual, Defendants-Appellants.

No. 77–1946.

United States Court of Appeals, Tenth Circuit.

Argued March 14, 1979.

Decided Aug. 6, 1979.

William R. Pendergast, Washington, D. C. (Wayne H. Matelski, McMurray & Pendergast, Washington, D. C.; Christopher Lane, Cassandra G. Sasso, Dowson, Nagel, Sherman & Howard, Denver, Colo., on the brief), for defendants-appellants.

Bruce F. Fein, Washington, D. C. (John H. Shenefield, Robert B. Nicholson, Dept. of Justice, Washington, D. C.; Jeffrey B. Springer, Donald O. Beers, Food and Drug Administration, Rockville, Md., on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, LOGAN, Circuit Judge, and MILLER,[*] Judge.

MILLER, Judge.

This appeal is from a judgment and orders of the district court[1] (nonjury trial) permanently enjoining defendants-appellants from marketing the drug X–Otag Plus in interstate commerce and directing the destruction of a quantity of the drug seized by the Government. We affirm the injunction, but remand the order for destruction to the district court to stay destruction of the seized drug pending further proceedings.

---

[*] The Honorable Jack R. Miller, Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

[1] Reported *sub nom. United States v. X–Otag Plus Tablets*, 441 F.Supp. 105 (D.Colo.1977).

X–Otag Plus is a prescription drug in tablet form having as its active ingredients 50 mg. of orphenadrine citrate and 325 mg. of acetaminophen; [2] it also contains a number of inactive ingredients. Its intended use is to relieve muscular pain. Orphenadrine citrate has been used since 1951 in the United States and in other countries as a muscle relaxant and for its analgesic properties. Acetaminophen, which can be purchased over-the-counter, has been used as an analgesic and as an aspirin substitute.

*Background*

The Government initiated a condemnation proceeding pursuant to 21 U.S.C. § 334 [3] against a quantity of the involved drug that had been seized by the Government. The drug was manufactured by Tutag Pharmaceuticals, Inc. ("Tutag") and marketed under the name X–Otag Plus. The Government later sought an injunction against Tutag under 21 U.S.C. § 332(a) [4] to prevent any further shipment of X–Otag Plus in interstate commerce. In support of both actions, which were consolidated for trial, the Government argued, as it does in this appeal, that X–Otag Plus is a "new drug" within the meaning of 21 U.S.C. § 321(p)(1) [5] and that it cannot be introduced into interstate commerce unless, as required by 21 U.S.C. § 355, [6] the FDA has approved a new drug application ("NDA") or an abbreviated new drug application ("ANDA"). [7] In October of 1976, Tutag submitted an ANDA to FDA for X–Otag Plus; but in April of 1977 the Director of

2. Although acetaminophen has been generally recognized as safe and effective when properly labeled, orphenadrine citrate has been determined to be a "new drug" by the Food and Drug Administration ("FDA") (39 Fed.Reg. 9487, March 11, 1974). Accordingly, the district court found that "both of the component parts of X–Otag Plus have *not* been generally recognized as safe and effective;" further, that there is no generally recognized combination drug in the exact form, dosage, and application of X–Otag Plus. *Compare United States v. Articles of Drug (In re Lannett Co.)*, 585 F.2d 575 (3d Cir. 1978).

3. 21 U.S.C. § 334(a)(1) provides, in pertinent part, as follows:

   (a)(1) Any article of food, drug, or cosmetic that is adulterated or misbranded when introduced into or while in interstate commerce or while held for sale (whether or not the first sale) after shipment in interstate commerce, or which may not, under the provisions of section 344 or 355 of this title, be introduced into interstate commerce, shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel or information and condemned in any district court of the United States or United States Court of a Territory within the jurisdiction of which the article is found . . .

4. 21 U.S.C. § 332(a) provides:

   (a) The district courts of the United States and the United States courts of the Territories shall have jurisdiction, for cause shown, and subject to the provisions of section 381 (relating to notice to opposite party) of Title 28, to restrain violations of section 331 of this title, except paragraphs (h)–(j) of said section.

   21 U.S.C. § 331(a) provides:

   The following acts and the causing thereof are prohibited:

   (a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded.

5. 21 U.S.C. § 321(p)(1) provides, in pertinent part, as follows:

   (p) The term "new drug" means—

   (1) Any drug . . . the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a "new drug" if at any time prior to the enactment of this chapter it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use . . . .

6. 21 U.S.C. § 355(a) reads, in part, as follows:

   (a) No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application . . . is effective with respect to such drug.

7. As found by the district court, an ANDA may be filed, rather than an NDA, when FDA finds such an application to be sufficient for the drug in question. 21 C.F.R. § 314.1(a). Approval of the use of an ANDA relieves an applicant-manufacturer from furnishing studies showing the safety and effectiveness of the drug in question.

the Bureau of Drugs decided that an NDA rather than an ANDA was required and gave notice of opportunity for hearing on that decision. On June 27, 1977, Tutag requested a hearing, and this was held before Administrative Law Judge Daniel J. Davidson, who denied approval of Tutag's ANDA in a decision dated February 8, 1979 (Docket No. 77N–0145).[8] Both parties have filed exceptions with the FDA Commissioner. Meanwhile, in March of 1977, Tutag filed an NDA for X–Otag Plus, but this has never been approved. Prior to filing either an ANDA or an NDA, Tutag shipped X–Otag Plus in interstate commerce. (Although both 21 U.S.C. § 331(a) and § 334(a)(1) prohibit misbranded drugs, the parties stipulated that, if X–Otag Plus is not a "new drug," it need not have an approved NDA or ANDA and is not misbranded.)

The district court found *inter alia* : (1) The production of an administrative record supporting the FDA's contention that X–Otag Plus is a "new drug" is not required for the court to determine matters before it in condemnation and injunction proceedings; and (2) The Government had shown, by a preponderance of the evidence, that X–Otag Plus is a "new drug" within the meaning of 21 U.S.C. § 321(p)(1) for purposes of the condemnation and injunction proceedings. Technically, the latter was a finding that FDA had probable cause to believe that X–Otag Plus was a "new drug."[9] *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950). *See CIBA Corp. v. Weinberger*, 412 U.S. 640, 93 S.Ct. 2495, 37 L.Ed.2d 230 (1973).

## OPINION

█ Tutag argues that under *Rutherford v. United States*, 542 F.2d 1137 (10th Cir.

1976), the district court should have remanded the case to FDA for development of an administrative record in support of FDA's contention that X–Otag Plus is a new drug. In *Rutherford*, FDA had refused to allow the shipment or distribution of laetrile on the ground that it was a "new drug," even though there was no NDA on file with the FDA and there had been no formal determination of whether laetrile was a new drug. Plaintiffs, a class of terminally ill cancer patients, who were without the means, by themselves, to undertake an FDA proceeding, sought an injunction against the FDA's action. This court remanded the case to FDA for development of an administrative record. Especially to be noted is that FDA had not issued any regulation or rule on laetrile and that this court regarded the FDA action as in the nature of a declaratory order [10] requiring an administrative record.

Here, however, the FDA has only instituted condemnation proceedings against a certain quantity of the drug and injunction proceedings against a single drug manufacturer. Such action, including any assertions in connection therewith, is not in the nature of a declaratory order. The determination that X–Otag Plus is a "new drug" (for purposes of . the condemnation and injunction proceedings) was made by the district court following a trial; whereas, in *Rutherford*, the FDA had already determined, prior to trial, that laetrile was a new drug and had refused to allow its distribution to patients in the United States. In this case, although one lot of the drug was seized by the United States Marshall, no destruction order or injunction against Tutag was issued until *after* a trial, giving Tutag ample opportunity to rebut the FDA's case. We

---

**8.** As the district court pointed out, final FDA determination on ANDAs or NDAs is subject to review by the circuit court of appeals.

**9.** The court said, 441 F.Supp. at 115:

The Order of this Court is in no way a final determination that the drug X–Otag Plus is or is not a "new drug." Such a determination is for the FDA. We simply find that for the purposes of an enforcement and injunc-

tion action, and limited to issues inherent herein, the United States has shown by a preponderance of the evidence that X–Otag Plus is a "new drug."

**10.** A declaratory order is a "self-operative industry-wide regulation." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 147, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

conclude that, under the facts of this case, no administrative record was required. Accordingly we hold that the district court did not err in refusing to remand to the FDA for development of an administrative record as urged by Tutag.

■ Tutag also argues that the district court erred in finding that, for purposes of the condemnation and injunction proceedings, the Government had shown, by a preponderance of the evidence, that X–Otag Plus is a "new drug" within the meaning of 21 U.S.C. § 321(p)(1), *supra* note 5. The district court thoroughly reviewed the conflicting evidence on this point in over four pages of the printed opinion, *supra* at 110–14, and, as pointed out in note 2, *supra*, found that "both of the component parts of X–Otag Plus have *not* been generally recognized as safe and effective." We are satisfied that this finding is not clearly erroneous. *See United States v. United States Gypsum*, 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746 (1948).[11]

As the district court made clear, Tutag is not precluded from proving before FDA (and the circuit court of appeals on review) that X–Otag Plus is not a new drug. In the proceedings which, as related above, are still pending before FDA, Tutag may convince the FDA that the drug is not new or it may satisfy the requirements necessary for placing a new drug on the market. In either event Tutag would be able to market X–Otag Plus.

■ The district court ordered destruction of the lot of X–Otag Plus already seized by the United States Marshall,[12] saying (441 F.Supp. at 115):

> By our reading of the statute, the language "any article condemned . . . *shall* be disposed of by destruction," 21 U.S.C. § 334(d)(1) [emphasis added], does not encompass staying destruction while awaiting an FDA determination . . . .

However, the pertinent language of 21 U.S.C. § 334(d)(1) is as follows:

> Any food, drug, device, or cosmetic condemned under this section shall, after entry of the decree, be disposed of by destruction or sale as the court may, in accordance with the provisions of this section, direct . . . .

The phrase "may . . . direct" instead of "shall . . . direct" or "directs" is advisory rather than mandatory and clearly implies that the court has some discretion over the time and manner of destruction. No need appears for destruction of the seized drug prior to conclusion of Tutag's drug application proceedings, which conceivably might turn out to be favorable to it and to justify revocation of the order for destruction. Accordingly, we remand the order for destruction to the district court to stay destruction until completion of said proceedings and possible revocation of the order for destruction itself.

11. Tutag also raises a question about problems with the ANDA proceedings at the FDA. However, this appeal is concerned only with the condemnation and injunction proceedings before the district court.

12. By order of the district court, this destruction order has been stayed pending the outcome of this appeal.