**Ron DUNCAN and Viola Duncan, individually and as parents and next friend of Suzanne Duncan, a minor, and on behalf of all persons similarly situated, Plaintiffs,**

v.

**UNITED STATES of America, Richard S. Schweiker, Secretary of Health and Human Services; and Arthur Hayes, Jr., Commissioner of Food & Drug Administration, Defendants.**

No. CIV–82–599–D.

United States District Court,
W.D. Oklahoma.

April 13, 1984.

James M. Little, Oklahoma City, Okl., for plaintiffs.

William S. Price, U.S. Atty., Richard Freeman, Asst. U.S. Atty., Oklahoma City, Okl., for defendants.

## ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS

DAUGHERTY, District Judge.

Defendants have filed their motion for summary judgment, asserting that there is no genuine issue as to any material fact and that, on the basis of the undisputed facts, they are entitled to judgment as a matter of law. The Motion has been fully briefed on both sides, and a hearing has been held pursuant to Rule 56, Federal Rules of Civil Procedure.

Plaintiffs sue individually and as parents and next friend of their daughter, Suzanne, who has Down's Syndrome or mongolism. They seek an injunction against the Secretary of Health and Human Services (Secretary) and the Commissioner of Food and Drugs (Commissioner) prohibiting their interference with the introduction of the "U" Series drug into interstate commerce, together with certain incidental declaratory relief. Plaintiffs now go to Michigan and visit Dr. Henry Turkel, the developer of the drug, where they get from him a six-months supply and bring it back to Oklahoma.

Plaintiffs allege that Suzanne cannot fully develop and be educated without treatment with the "U" Series drug. They claim (1) that it is not a "new drug" and Defendants' determination that it is a "new

drug" is arbitrary and unreasonable as applied to Plaintiffs, and (2) that the administrative remedies to secure approval for interstate shipment of the "U" Series, which they admit they have not pursued, are so burdensome and time-consuming that they do not have the resources to obtain such approval and therefore (a) have no adequate administrative remedy, (b) are denied equal protection, and (c) are denied the liberty to choose their daughter's treatment without due process of law.

## JURISDICTION

As the basis of the Court's subject matter jurisdiction herein, the Plaintiffs assert 28 U.S.C. § 1343 (civil rights) and 28 U.S.C. § 2201 (declaratory relief). Plaintiffs have not alleged any basis for jurisdiction under Section 1343, and while the Declaratory Judgment Act grants the Court an additional remedy, it adds nothing to the Court's jurisdiction. *Fry Bros. Corp. v. Department of HUD*, 614 F.2d 732, 733 (Tenth Cir.1980). The proper jurisdictional ground herein is federal question jurisdiction, 28 U.S.C. § 1331.

## EQUAL PROTECTION

[1] The equal protection argument is easily determined on the pleadings. Plaintiffs have identified themselves as members of a class of Down's Syndrome persons and their parents and custodians. Neither the Federal Food, Drug and Cosmetic Act nor any action of the Defendants has singled out such a class for distinctive treatment. Nor is discriminatory treatment implied in either the statute or any administrative action. As there is no discrimination, there can be no question as to whether such discrimination is reasonable *vel non* or invidious *vel non.*

## THE "NEW DRUG" ISSUE

Section 505(a) of the Federal Food, Drug and Cosmetic Act (the Act), 21 U.S.C. § 355(a), provides:

"No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) of this section is effective with respect to such drug."

The word "drug" and term "new drug" are defined in the Act as follows:

"The term "drug" means ... articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man ...." § 201 of the Act, 21 U.S.C. § 321(g).

The term "new drug" means—

"(1) Any drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a "new drug" if at any time prior to the enactment of this chapter it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use; or

"(2) Any drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions." § 201 of the Act, 21 U.S.C. § 321(p).

Section 505(b) of the Act, 21 U.S.C. § 355(b), provides that "any person may file" a new drug application (NDA), but he must include certain data: reports of investigations into safety and effectiveness, a list of components, a statement of composition, a description of manufacturing and processing methods, samples of the drug,

and specimens of the proposed labeling which state the prescribed or recommended conditions of its use. If the FDA refuses to approve the NDA, then "the applicant" may appeal to the Court of Appeals, which has exclusive jurisdiction of the review of the FDA action regarding that NDA. § 505(h) of the Act, 21 U.S.C. § 355(h).

■ The Plaintiffs have not filed an NDA and do not have standing to seek review of a decision on the NDA of another under 21 U.S.C. § 355(h). Even if they did have such standing, this Court has no subject matter jurisdiction over such a review, which the Act gives exclusively to the Court of Appeals. Nor have Plaintiffs, on their own, filed a claim of investigational exemption. Hence, this action is not a judicial review under the Act.

■ The recent Laetrile case of *Rutherford v. United States* [1] appears to dispose of the new drug issue. Though involving a different drug, the two cases are otherwise quite similar. Both involve plaintiffs who are not manufacturers but are patients who desire to use a non-approved drug. No drug manufacturer is involved in either litigation. However, in *Rutherford* no manufacturer had filed a NDA with the Commissioner, whereas, in this case Dr. Turkel, a manufacturer of the "U" Series, filed two NDA's which have been denied and the denials affirmed by the Sixth Circuit Court of Appeals.[2] *Rutherford* clearly establishes that the new drug approval requirement applies to patients or users of a new drug as well as a manufacturer of the same. See *Rutherford v. United States*, 616 F.2d 455 (Tenth Cir.1980), *cert. denied*, 449 U.S. 937, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980). The *Rutherford* litigation considered whether a new drug is exempt as to the terminally ill (which is not asserted herein) and also considered the burdensomeness/due process issue and the grand-

---

**1.** The tortuous path of the *Rutherford* litigation is shown by the following citations and orders (in sequence):

*Rutherford v. United States*, 542 F.2d 1137 (Tenth Cir.1976); *Rutherford v. United States*, 424 F.Supp. 105 (W.D.Okl.1977); *Rutherford v. United States*, 429 F.Supp. 506 (W.D.Okl. 1977); *Rutherford v. United States*, 438 F.Supp. 1287 (W.D.Okl.1977); *Rutherford v. United States*, 582 F.2d 1234 (Tenth Cir.1978); *Rutherford v. United States*, 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979); *Rutherford v. United States*, 616 F.2d 455 (Tenth Cir. 1980); *Rutherford v. United States*, No. 81–1757, Tenth Circuit Court of Appeals, (Unpublished Opinion, April 4, 1983):

"This matter comes on for consideration of:

A. Motion of the United States requesting this Court to direct the District Court to dismiss the complaint and withdraw the injunctions entered by the District Court against the United States.

B. Motion of Glen L. Rutherford, et al. to dismiss the appeal.

C. Response of Glen L. Rutherford, et al. in opposition to the motion of the United States to dismiss.

D. The response of the United States to the motion of Glen L. Rutherford, et al. to dismiss the appeal.

Upon consideration whereof, it is ordered:

1. The motion of Glen L. Rutherford, et al. to dismiss the captioned appeal is denied.

2. The motion of the United States for summary reversal of the judgment of the United States District Court for the Western District of Oklahoma entered May 1, 1981, is granted.

"3. The United States District Court for the Western District of Oklahoma is ordered to dismiss the complaint in Civil No. C–75–0218–B, and dissolve all injunctions entered against the United States, its Departments, Agencies, Services, Agents and Employees, in said proceeding.

/s/ Howard K. Phillips
HOWARD K. PHILLIPS, Clerk"

*Rutherford v. United States*, No. CIV–75–0218–B, W.D.Okl., (Unpublished Order, March 2, 1984):

"In accordance with the order of the United States Court of Appeals for the Tenth Circuit (No. 81–1757, April 4, 1983),

IT IS ORDERED, ADJUDGED, AND DECREED that the complaint in this action be, and hereby is, dismissed, and it is further

ORDERED, ADJUDGED, and DECREED that all injunctions entered against the United States, its departments, agencies, services, agents, and employees in this proceeding be, and hereby are, dissolved.

Dated this 2nd day of March, 1984.

/s/ Luther Bohanon
UNITED STATES DISTRICT JUDGE"

**2.** By his NDA's, this manufacturer admitted that the "U" Series was a "new drug," and the FDA considered it as such in the denial of the NDA's. See *Turkel v. Food and Drug Administration, Dept. of H.E. & W.*, 334 F.2d 844 (Sixth Cir.1964) and *Ubiotica Corporation v. Food and Drug Administration*, 427 F.2d 376 (Sixth Cir.1970).

father clause issue, both of which matters will be hereinafter discussed.

■ It is clear that the "U" Series is a drug. It is for the treatment of disease (Down's Syndrome). *Rutherford* makes clear that it is also a "new drug" requiring users thereof as well as makers thereof to pursue the prescribed statutory procedures for approval for introduction into interstate commerce.

To the same effect as *Rutherford, see Carnohan v. United States,* 616 F.2d 1120 (Ninth Cir.1980) where the Ninth Circuit required a plaintiff who was one desiring to use Laetrile to exhaust his administrative remedies and seek approval under the Act. In *Rutherford v. American Medical Association,* 379 F.2d 641 (Seventh Cir. 1967), *cert. denied,* 389 U.S. 1043, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968), the plaintiffs were a physician and several patients who desired to use the drug Krebiozen without an approved application or an investigational exemption under 21 U.S.C. 355(i) and who were denied any relief and their complaint dismissed, and see *Gadler v. U.S.,* 425 F.Supp. 244 (D.Minn.1977) where a plaintiff sought the use of an unapproved drug for his personal use and was denied relief by a holding that the prohibition against shipping unapproved new drugs in interstate commerce applied to all persons and not just manufacturers or distributors. Also see *Tutoki v. Celebrezze,* 375 F.2d 105 (Seventh Cir.1967) (consumers of an unapproved cancer drug (Krebiozen) were held to be required to go through the new drug approval process, and their complaint for an injunction against the FDA was dismissed); *Forsham v. Califano,* 442 F.Supp. 203, 210 (D.D.C.1977), (physicians and consumers of a drug for diabetes sought to enjoin the FDA from suspending approval of a new drug application because of harm and inconvenience to which they allegedly would be subjected as the result of their inability to get the disapproved drug, but their motion for preliminary injunction was denied); *In re Morgan, et al. v. Matthews, et al.,* Civil Action No. 76–1637 (Nov. 30, 1976, D.S.Car.), (consumers of Laetrile were denied a preliminary injunction against the FDA for lack of probability of success on the merits because, *inter alia,* "No NDA is or was in effect with respect to Laetrile").

Hence, the "U" Series is an unapproved new drug under the Act and Plaintiffs as users thereof are not entitled as a matter of law to the requested injunctive relief by which the Defendants would be prohibited from interfering with their desired use thereof.

## BURDENSOMENESS ISSUE

The *Rutherford* litigation and several of the cases above cited have also settled the burdensomeness/due process claim made herein by Plaintiffs. Though expensive and time-consuming, the obtaining of the statutory approval for interstate movement of a drug is necessary for all, including a manufacturer and users.

In *Rutherford v. United States,* 616 F.2d 455, 457 (Tenth Cir.1980), *cert. denied,* 449 U.S. 937, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980), it is held:

"The use of Laetrile is sought to be prevented because in the opinion of the Commissioner the proponents have not met the burden imposed by the agency procedures and by the statute to fulfill the premarketing requirements. These standards are impressive, but they can be, and are regularly met by the pharmaceutical houses.

"It is apparent from the record that the proponents did not conduct the research and the laboratory testing required under the prevailing procedures, and it thus must be held that they did not meet their burden. The Court in *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207, refers to the exclusion of drugs 'for which there is no affirmative, reliable evidence of effectiveness.' This is a reference to these FDA procedures and to the laboratory procedures."

In *Carnohan v. United States,* 616 F.2d 1120 (Ninth Cir.1980) the District Court

**44**

held that the plaintiff who sought to use Laetrile in a nutritional program to prevent cancer had not filed an NDA with the FDA and that to do so would not be so burdensome when applied to private individuals as to infringe upon constitutional rights. In citing *Rutherford v. United States*, 616 F.2d 455 (Tenth Cir.1980), the Ninth Circuit rejected the burdensomeness argument and required the plaintiff to exhaust his administrative remedies to seek approval under the Act.

In *Rutherford v. American Medical Association*, 379 F.2d at 643, *cert. denied*, 389 U.S. 1043, 88 S.Ct. 787, 19 L.Ed.2d 835, the Court said:

"... plaintiffs still have not shown that they have in good faith attempted to comply with the procedures established by Congress for the introduction of new drugs, nor has it been shown that the failure to apply can be attributed solely to the activities of the FDA and the defendants. The fact that compliance might be expensive and burdensome is not unfairness in the procedure, but a consequence of a reasonable Congressional scheme for the introduction of new drugs."

In *Gadler v. U.S.*, 425 F.Supp. 244 (D.Minn.1977), the Court held:

"Furthermore, plaintiff has failed to demonstrate the substantial probability that he will succeed in establishing that the statutory scheme required to gain approval for Laetrile is unconstitutional. The court is concerned that the statutory scheme involved in gaining approval for a new drug application may involve costs which are so substantial as to cause plaintiff and persons similarly situated to forego compliance with 21 U.S.C. § 355(b). However, that scheme is constitutional as an exercise of Congress' power to set standards in order to protect the public from unsafe drugs, *Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973) ...."

■ Hence, Plaintiffs' claim that the requirements of the Act are so burdensome to them that they have been denied due process of law is without merit.

## THE GRANDFATHER CLAUSES

■ The Government argues that the two grandfather clauses, the pre-1938 clause in the Act, § 201(p)(1), 21 U.S.C. § 321(p)(1), and the pre-1962 clause in Public Law 87–781, October 10, 1962, 76 Stat. 788–789, do not apply. The Plaintiffs have not seriously argued that they do apply. Clearly, the pre-1938 clause does not apply. The pre-1962 clause does not exempt the drug from being a "new drug" subject to regulation, as it has not been composed of the same formula since before 1962. Hence, Plaintiffs are afforded no relief by these grandfather clauses.

## CONCLUSION

As it appears without dispute that the "U" Series is a drug; that two NDA's regarding the same filed with the Commissioner by the manufacturer for approval of same as a new drug have been denied; that the drug now stands as an unapproved drug; that the statutory requirements for the approval of the "U" Series drug applies to Plaintiffs as users thereof as well as a manufacturer thereof; that Plaintiffs have not filed an NDA on the "U" Series drug with the Commissioner; that Plaintiffs' claim that it is too burdensome to require them as users of the drug to comply with the Act for statutory approval is without merit; and that the grandfather clauses do not apply to the "U" Series drug, Defendants' Motion for Summary Judgment should be granted and Plaintiffs' action should be dismissed.