**Margaret C. JACOB, Personal Representative of the Estate of San D. Jacob, Deceased, Plaintiff,**

v.

**Gregory CURT and the American Cancer Society, Defendants.**

Civ. A. No. 89–0160 L.

United States District Court,
D. Rhode Island.

Sept. 20, 1989.

Michael Burns, Bigos, Burns & Partington, Pawtucket, R.I., Ferris F. Booth, Portland, Or., and Samuel A. Abady, New York City, for plaintiff.

Lincoln Almond, U.S. Atty. and Michael Iannotti, Asst. U.S. Atty., Providence, R.I., John Farley, III, Michael P. Milmoe, Gordon W. Daiger, Bolton, Farley, Daiger & Milmoe, Civ. Div., U.S. Dept. of Justice, Washington, D.C. and Atty. James Hahn, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This case is before the Court on the motion of defendant, Gregory Curt to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), for the failure of plaintiff to state a claim upon which relief can be granted.

This matter involves a young boy, San Jacob, who contracted cancer. After the boy's unfortunate death in 1985, his mother, as the personal representative of San Jacob's estate, initiated a 42 U.S.C. § 1983 claim against defendant Dr. Gregory A. Curt and a wrongful death claim against the American Cancer Society. Plaintiff argues that, by fabricating lies about the Immuno Augmentative Therapy (IAT) Clinic in the Bahamas, where San Jacob received treatment, defendant Curt caused it to be closed by the Bahamian government and that infringed upon San Jacob's constitutionally protected right to obtain the medical treatment of his choice.

For the reasons that follow, the motion to dismiss is granted.

### Background

The facts underlying plaintiff's complaint are as follows: In 1982, San Jacob, then an eleven year old boy, was diagnosed as having cancer. San Jacob and his parents

sought the traditional methods of medical assistance—chemotherapy, radiation, and surgery. Finding these treatments intrusive and painful, the Jacobs sought alternative treatments through the IAT Clinic in Freeport, Grand Bahama. The therapy involved injecting the patients with special blood serums. San Jacob received his first treatment from the IAT Clinic in March of 1984. In May, he returned to the United States with a supply of the blood serum. Although the treatment called for San Jacob to return to the clinic in July of 1985, the Bahamian government closed the clinic prior to his return. San Jacob died on October 29, 1985.

The plaintiff alleges that Dr. Curt, as an employee of the National Cancer Institute, an administrative agency of the United States government, caused the IAT Clinic to be closed by fabricating charges that the IAT Clinic exposed its patients to AIDS and to hepatitis. Plaintiff contends that Dr. Curt in his writings on this subject relied on ambiguous results from an investigation of the IAT Clinic. She claims that the doctor knew or should have known of the investigation's deficiencies. Dr. Curt co-authored an article which criticized the lack of safety and efficacy of the IAT Clinic. Plaintiff views Dr. Curt's actions as an attempt to curtail alternative cancer treatments and as a direct infringement on the IAT Clinic's patients' right to choose their personal medical treatment. In 1986, a United States congressional committee after hearings rejected the prior reports relied on by Dr. Curt and his co-author. The Clinic re-opened in March of 1986.

Plaintiff filed her complaint on January 5, 1989 and amended the complaint on January 25, 1989 in the Rhode Island Superior Court. On March 15, 1989, the case was removed to this Court. Five days later, Dr. Curt filed this motion to dismiss pursuant to Rule 12(b)(6).

On June 6, 1989, the Court heard oral arguments from counsel for Dr. Curt and plaintiff. The issues discussed were the constitutional right to medical treatment, the decedent's right to travel and the requirement of proximate cause. The Court took the matter under advisement and it is now in order for decision.

### Discussion

■ Although plaintiff framed her claim against Dr. Curt as a § 1983 action, the claim, in reality, is a *Bivens*-type action. Section 1983 requires that a person, acting under color of *state* law, deprive another of his or her constitutionally or federally–protected right. *Monroe v. Pape*, 365 U.S. 167, 184–85, 81 S.Ct. 473, 482–483, 5 L.Ed.2d 492 (1961) (emphasis added). The United States Supreme Court, in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), recognized a similar action, when federal agents violated individuals' federal constitutional rights. *See id.* at 395, 91 S.Ct. at 2004. Since Dr. Curt acted, at all times pertinent, on behalf of the federal government, the claim is really one under the *Bivens* doctrine.

■ In either a § 1983 suit or a *Bivens* claim, the plaintiff must allege a violation of a recognized constitutionally created right. Both the statutory § 1983 claim as well as the judicially-created *Bivens* action provide remedies rather than substantive rights. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 *reh'g denied*, 473 U.S. 925, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985); *Bivens*, *supra* 403 U.S. at 397, 91 S.Ct. at 2005. In short, for plaintiff's action to survive, she must base her claim on some constitutional violation. In this regard, plaintiff relies on a constitutional right of individuals to obtain the medical treatment of their choice. She claims that Dr. Curt deprived San Jacob of his constitutional right to chose immuno augmentative therapy in that Dr. Curt's statements regarding the contaminated blood at the IAT Clinic resulted in the Bahamian government closing the clinic.

The Court will now address the issues raised by the motion to dismiss.

### A. Right to Medical Treatment.

Plaintiff relies primarily on *Andrews v. Ballard*, 498 F.Supp. 1038 (S.D.Tex.1980), in which the United States District Court

for the Southern District of Texas held that Texas residents had a "constitutional right, encompassed by the right of privacy, to decide to obtain acupuncture treatment." *Id.* at 1057. In *Andrews,* 46 residents of Texas challenged the Texas Medical Procedure Act which limited the practice of acupuncture to licensed physicians. *Id.* at 1039. The court, finding that the state statute virtually abolished acupuncture as a form of treatment, held that the statute interfered too stringently on the plaintiffs' rights. *Id.* at 1052–53.

The *Andrews* case questioned the limit of government involvement with personal medical choices. A review of other federal court decisions indicates that the government's interest in protecting the health of its citizens often overrides a patient's choice of a particular treatment or medication. *See Rutherford v. United States,* 616 F.2d 455, 457 (10th Cir.) (court denied patients' right to obtain laetrile), *cert. denied,* 449 U.S. 937, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980); *see also Carnohan v. United States,* 616 F.2d 1120, 1122 (9th Cir.1980); *Kulsar v. Ambach,* 598 F.Supp. 1124, 1126 (W.D.N.Y.1984); *Duncan v. United States,* 590 F.Supp. 39, 43 (W.D. Okl.1984). In *Rutherford,* the court stated that "the decision by the patient whether to have a treatment or not is a protected right, but his selection of a particular treatment ... is within the area of governmental interest in protecting public health." *Rutherford, supra* at 457. Numerous other courts have refused patients' requests to override the Food and Drug Administration's (FDA) decisions which, in some cases, have deprived dying patients of the medication of their choice. *Carnohan, supra* at 1122; *Duncan, supra* at 44, *Forsham v. Califano,* 442 F.Supp. 203, 210 (D.D.C. 1977), *aff'd on other grounds,* 587 F.2d 1128 (D.C.Cir.1978). These cases emphasize that patients do not have carte blanche to insist that the United States provide the medication of choice.

■ The Jacob's action contrasts remarkably from the right to medicine/treatment cases. Here, plaintiff does not challenge a state or federal statute which regulates or proscribes immuno augmentative therapy. Plaintiff does not question the FDA's decision to reject the practice of immuno augmentative therapy in this country.[1] Plaintiff chose a therapy which was located in a foreign country over which the United States government had no authority. The plaintiff's action, in reality, challenges the Bahamian government's decision to close the clinic. Since even plaintiff admits that "[n]either [Curt] nor the United States government ha[d] the authority directly to close the Clinic," plaintiff cannot claim that a United States agent deprived San Jacob of his right. Plaintiff's medical rights claim against Dr. Curt is, therefore, without legal basis.

**B. Right to Travel.**

The United States Supreme Court has distinguished between the right to interstate travel and the freedom to travel abroad. *See Haig v. Agee,* 453 U.S. 280, 306, 101 S.Ct. 2766, 2781, 69 L.Ed.2d 640 (1981) (citing *Califano v. Aznavorian,* 439 U.S. 170, 176, 99 S.Ct. 471, 474–475, 58 L.Ed.2d 435 (1978)). In *Califano,* the court held that the "[c]onstitutional right of interstate travel is virtually unqualified. By contrast, the 'right' of international travel has been considered no more than an aspect of 'liberty' protected by the due process clause of The Fifth Amendment." *Id.* (citations omitted).

■ Although this Court recognizes that San Jacob had the freedom to travel to Grand Bahama for medical treatment, it is hard-pressed to contemplate any scenario in which plaintiff could argue that Dr. Curt infringed upon the decedent's right. In fact, San Jacob exercised his right by traveling to Grand Bahama in 1984. Dr. Curt had no authority over the other administrative branches of the government. Dr. Curt never contacted San Jacob, nor did he try

---

**1.** Plaintiff attached an article to the complaint which states that the FDA had, in fact, refused to approve immuno augmentative therapy.

to convince San Jacob not to leave the United States to seek cancer treatment. Dr. Curt never interfered with San Jacob's travel plans. It appears that Dr. Curt never heard of San Jacob until this lawsuit. Therefore, although this Court finds that San Jacob had a right to travel to Grand Bahama to obtain the immuno augmentative therapy, it also finds that Dr. Curt did not infringe upon or violate San Jacob's right.

## C. Proximate Cause.

■■ Even if this Court found a constitutional deprivation, plaintiff's action would fail for lack of proximate cause. As in tort claims, when alleging constitutional rights deprivation claims, plaintiffs must delineate the causal connection between the alleged wrongful act and the deprivation. *Clark v. Library of Congress*, 750 F.2d 89, 98 (D.C.Cir.1984); *Behre v. Thomas*, 665 F.Supp. 89, 94 (D. N.H.1987) (*Bivens* action failed to establish causal connection). The application of proximate cause, "[a]s a practical matter, ... must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." W. Prosser & W. Keeton, *Prosser and Keeton on the Law of Torts* § 41 (5th ed. 1984) [hereinafter Prosser]. Indirect responsibility for harm is insufficient. *See Lojuk v. Quandt*, 706 F.2d 1456, 1468 (7th Cir.1983) (court dismissed *Bivens*-type action against federal official because plaintiff failed to establish defendant's personal responsibility for claimed deprivation). Even if the original tortfeasor desired the ultimate result, an independent, intervening act by another can destroy proximate causation. *Springer v. Seaman*, 821 F.2d 871, 878 (1st Cir.1987); *Arnold v. International Business Mach. Corp.*, 637 F.2d 1350, 1356–57 (9th Cir.1981) (control over parties who caused actual deprivation important factor when imposing liability).

In *Arnold*, the Ninth Circuit considered whether the wrongful conduct of a task force could be imputed to the plaintiff's employer, IBM, which had initiated an investigation which led to the task force's wrongful arrest of the plaintiff. The plaintiff sued IBM under §§ 1983 and 1985. The Ninth Circuit found that but for IBM's actions, the task force would not have investigated or arrested the plaintiff. *Id.* at 1357. The court also noted that, aside from initiating the investigation, IBM employees provided the task force with information and participated in the grand jury hearing involving the plaintiff. *Id.* Finding nothing in the record to indicate that IBM exerted any control over the task force's decision-making, however, the Ninth Circuit affirmed the district court's decision to dismiss the claim against IBM for lack of proximate cause. *Id.*

Other courts, reviewing § 1983 claims, have considered whether the original wrongdoer "set ... in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir.1978). Those acts or words which "set the motion," however, must not be too remote. *See Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980).

In *Martinez*, the Supreme Court considered whether the parents of a 15 year old girl who had been murdered after the California parole board released a prisoner could obtain relief under § 1983. The parents' claim rested on the assertion that the parole board knew or should have known of the parolee's violent propensities. Although the court found state action, it held that the actions of the parolee five months after the decision to release him could not be attributed to the fault or consequence of the state action. *Id.*

■ Similarly, the undisputed facts in the case at bar point to lack of proximate cause.[2] The plaintiff's decedent obtained medical treatment in Grand Bahama. Although Dr. Curt criticized the therapy chosen by San Jacob, the Bahamian government exercised its independent authority in

---

**2.** When undisputed facts would lead all reasonable persons to the same conclusion, causation becomes an issue of law. *See* Prosser, *supra* § 45.

closing the Clinic. Dr. Curt had no control or influence over that foreign government. However unfortunate that San Jacob died, this undisputed set of facts illustrate that the reguisite causal connection is lacking to justify imposing liability on defendant Curt.

Even if, as plaintiff alleges, Dr. Curt's criticism of the Clinic was wrongful, the Court cannot hold him liable for the independent intervening acts of the Bahamian government. The Seventh Circuit, in *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323 (7th Cir.1978), *cert. denied*, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53 (1979), denied the liability of a party who furnished inaccurate information to police which led to the wrongful arrest of the plaintiff. *Id.* at 327. Similarly, the Fifth Circuit dismissed a juvenile's § 1983 claim against the mayor for the mayor's "shoot to kill" policy. *Palmer v. Hall*, 517 F.2d 705, 708–10 (5th Cir.), *reh'g denied*, 521 F.2d 815 (1975). The court found that the mayor's mere words, however unreasonable, did not cause or contribute to the police officer's conduct which led to the juvenile's injury. *Id.* To hold Dr. Curt liable because the Bahamian government closed the IAT Clinic would be comparable to holding a lawyer liable for making a questionable argument that a court accepts. Since Dr. Curt had no decisionmaking authority over the Bahamian government, the claim against him must be dismissed. Under any view of this case, Dr. Curt's article cannot be said to be the proximate cause of the closure of the Clinic let alone San Jacob's death.

## CONCLUSION

For the reasons stated above, the motion of defendant Curt to dismiss hereby is granted.

*It is So Ordered.*