**Robert COWAN, Plaintiff,**

v.

**UNITED STATES of America, Department of Health and Human Services, and The Food and Drug Administration, Defendants.**

**No. 97–CV–1124–B.**

United States District Court,
N.D. Oklahoma.

Feb. 18, 1998.

---

Jeff Nix, R. Scott Scroggs, Nix & Scroggs, Tulsa, OK, for Robert Cowan, plaintiff.

Peter Bernhardt, United States Attorney, Tulsa, OK, Drake Cutini, U.S. Dept. of Justice, Washington, DC, Diane Maloney, U.S. Food and Drug Admin., Rockville, MD, for Department of Health and Human Services and Food and Drug Admin.

## ORDER

BRETT, District Judge.

The Court has for consideration Plaintiff's Objections to the Court's Recommendations and Findings entered by Magistrate Judge Sam Joyner (hereinafter "R & R") and filed January 15, 1998, (Docket # 8) in which the Magistrate Judge recommends that Plaintiff's Application for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction be denied. Following de novo review by the Court as required by 28 U.S.C. § 636(b)(1)(C), the Court concludes Plaintiff's objections should be overruled and the R & R adopted by this Court, as modified by this order.

Plaintiff raises two propositions in his Objections which parallel the positions urged before the Magistrate Judge. (Docket # 9) Defendants' response (Docket # 10) address-

es Plaintiff's assertions and additionally challenges the jurisdiction of this Court to enter any order in this matter. First, Defendants assert Plaintiff failed to properly commence a civil action by filing a complaint with this Court. Defendants next question whether Plaintiff has standing to raise the issues to be reviewed. As these go to the fundamental authority of this Court, the jurisdictional issues must be addressed first.

Plaintiff filed an initial pleading on December 22, 1997, (Docket # 1) styled "Plaintiff's Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction." By order entered December 22, 1997, (Docket # 2) Plaintiff's Application for Temporary Restraining Order was denied in part for failure to comply with Fed.R.Civ.P. 65(b)(1) and (2). Plaintiff then filed Supplementary Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction ("Supplementary Application", (Docket # 3)), which addresses the deficiencies of his original pleading and the case was referred to the United States Magistrate Judge for hearing and entry of Report and Recommendation.

Defendants initial pleading, Defendants' Memorandum in Opposition to Plaintiff's Application for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction, filed one day prior to hearing, (Docket # 4) first raised the jurisdictional issue that Plaintiff had not filed a complaint with the Court as required by the federal rules. The Court notes this issue was raised by Defendants in every pleading. Following entry of the R & R, this Court obtained copies of the audiotapes of the proceedings held before the Magistrate Judge on December 31, 1997, and directed their non-certified transcription by court personnel to aid the Court in its de novo review. Counsel for Defendants raised the issue of no complaint being filed in the hearing, to which Plaintiff's counsel responded by stating the issue would be addressed in post-hearing briefing and that the requisite complaint would be prepared. The Court notes, however, that no complaint was filed nor was the failure to file addressed in Plaintiff's Response to Defendants' Memorandum in Opposition to Plaintiff's Application for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction. (Docket # 6) The issue was again raised by Defendants in their reply brief (Docket # 7) and finally in Defendants' Response to Plaintiff's Objections to the Court's Recommendations and Findings. (Docket # 10)

 The Court has independently reviewed Plaintiff's Supplementary Application in light of Defendants' continuing objection and concludes it minimally satisfies the requirements of Fed.R.Civ.P. 8(a), which requires a short and plain statement of the grounds upon which the court's jurisdiction is based, a short and plain statement of the claim showing the pleader is entitled to relief, and a demand for judgment for the relief sought. Rule 8(f), provides that all pleadings are to be construed so as to do substantial justice. The purpose of this rule is to facilitate a proper decision on the merits. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This Court concludes that the technical failure of Plaintiff to include in the style of his pleading the word "complaint" does not justify this Court's finding no jurisdiction to consider this action, and although Plaintiff has failed to state the statutory basis for jurisdiction, the pleading filed calls upon the Court's power to issue declaratory relief pursuant to 28 U.S.C. § 2201.

The issue of Plaintiff's standing to seek relief from this forum, a point on which Plaintiff and his pleadings also appear conspicuously silent, is somewhat more elusory. Defendants cite *Allen v. Wright* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), in support of their position. This Court finds little guidance in that decision. In *Allen,* Justice O'Conner held that black parents did not have standing to prevent the government from violating the law in granting tax exemptions to private schools absent allegations of direct injury. At page 3324, the Court states: "Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights ... and the requirement that a plaintiff's claim fall within the zone of interests protected by the law invoked."

It would certainly appear that a person suffering from a terminal illness would have a claim which would fall within this definition. However, in the context of litigation which has addressed the rights of individuals suffering from debilitating or terminal illness who are attempting to enjoin the government from denying them access to a new or unapproved treatment, numerous courts have held standing is conferred only upon those involved in the statutory application process. A 1984 decision from the western district of Oklahoma is illustrative.

In *Duncan v. United States*, 590 F.Supp. 39 (W.D.Okla.1984), the Court found parents of a child suffering from Down's Syndrome did not have standing to seek review of a decision on the new drug application of another. *Duncan* cites numerous cases which would seemingly provide precedent to this Court to deny Plaintiff's standing before this Court. *Duncan* also provides an exhaustive analysis and history of *United States v. Rutherford*, 442 U.S. 544, 554–557, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979), the case on which this Court relies to find Plaintiff does have standing to raise the issues now before the Court.

Though cited by Defendant's, *Rutherford* does not, in fact, directly confront whether the terminally ill patient has standing. Rather, the failure of *Rutherford* to address the issue implies the Court determined it was not one which required examination. It is not for this Court to presume the highest court in the land overlooked the question of its jurisdiction, whether raised by the litigants or not.

 Likewise, the Magistrate Judge does not directly address the issue of Plaintiff's standing in his R & R. Arguably, at page 12 of the R & R, he indirectly approaches this issue by urging Plaintiff's physician to pursue approval of his Investigational New Drug application as quickly as possible. This Court concludes this does not constitute a finding that this Plaintiff does not have standing, but rather a commentary on what must be the ultimate holding by this Court.

The Court has reviewed in great depth the substantive arguments raised by Plaintiff in his objections to the R & R. Plaintiff's asser-

tions that the goat serum anti-body is not subject to regulation by the FDA simply is not supported by the weight of authority. Likewise, this Court finds the extensive discussion by the Magistrate Judge of the statutory scheme and its application to the facts of this case is dispositive of the remaining issues raised. After careful consideration of the record and the issues, the Court has concluded that the R & R should be and the same is hereby AFFIRMED as modified by this order.

It is therefore ORDERED that Plaintiff's Application for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction be denied for the reasons more fully set forth in the R & R.

## *REPORT AND RECOMMENDATION*

JOYNER, United States Magistrate Judge.

On December 24, 1997, Plaintiff filed an Application for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction. [Doc. Nos. 3–1, 3–2, 3–3]. Defendants filed a Brief in Opposition to Plaintiff's Application on December 30, 1997. This motion for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction was referred by minute order dated December 29, 1997, to the assigned United States Magistrate Judge. A hearing was held on December 31, 1997. Plaintiff's doctor, Gary Davis, M.D., and Plaintiff testified at the hearing. At the hearing, all parties requested additional time to brief the issues. Plaintiff's brief was filed January 6, 1998, and Defendants' brief was filed January 9, 1998.

Plaintiff was represented at the hearing by Jeffrey Nix and Scott Scroggs. Defendants were represented at the hearing by Assistant United States Attorney Peter Bernhardt. After consideration of the arguments of the parties, the case law, the statutes, the testimony of the witnesses, and the pleadings, the United States Magistrate Judge recommends that Plaintiff's Application for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction be **DENIED**.

## The Issue

Plaintiff and Plaintiff's doctor testified that Plaintiff is terminally ill. Dr. Gary Davis, Plaintiff's doctor, testified that Plaintiff has AIDS and that Plaintiff cannot tolerate the "traditional" drug treatments for AIDS. Dr. Davis testified that he has developed a drug (containing antibodies obtained from the injection of the AIDS virus into a goat) that may be effective in treating AIDS (hereafter referred to as the goat neutralizing antibody drug[1]). Dr. Davis additionally testified that Plaintiff has been informed of the numerous potential risks associated with the injection of the goat neutralizing antibody drug, and that these risks include but are not limited to death or blindness. Plaintiff testified that Dr. Davis had informed him that the goat neutralizing antibody could cause blindness or death.

Dr. Davis applied to the Food and Drug Administration ("FDA") for approval to begin testing the goat neutralizing antibody drug in March of 1997. On April 9, 1997, Dr. Davis' application was placed on "clinical hold" by the FDA. An affidavit submitted by Richard M. Lewis of the FDA indicates that the FDA informed Dr. Davis of the reasons for the clinical hold and requested a meeting with Dr. Davis to clarify and suggest possible resolutions of the issues which led to the clinical hold. Dr. Davis testified that he has yet met with the FDA, and that he has not provided additional information to the FDA. The FDA has informed Dr. Davis that he does not have approval from the FDA to use the goat neutralizing antibody, and that he cannot use his experimental new drug absent approval.

Plaintiff requests that Dr. Davis be authorized to inject Plaintiff with the with the experimental goat neutralizing antibody drug and that the FDA be enjoined from interfering with Dr. Davis' treatment of Plaintiff.

## The FDA and Regulation of Drug Use

The United States Supreme Court and the Tenth Circuit Court of Appeals have ad-dressed the application of the Food, Drug, and Cosmetic Act (the "FDCA") to terminally ill individuals. The Courts have concluded that the FDCA contains no exception for terminally ill patients and that the FDCA is constitutional. *United States v. Rutherford,* 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979); *Rutherford v. United States,* 616 F.2d 455 (10th Cir.1980). Recognizing these decisions, Plaintiff does not, in his briefs, specifically challenge the constitutionality of the FDCA. Plaintiff merely asserts that he meets an exception to the FDCA, and asks this Court to prohibit the FDA from interfering with the administration of the goat neutralizing antibody drug to Plaintiff. The Court must therefore interpret the statute and the exceptions argued by Plaintiff.

Investigational New Drug ("IND") Applications are governed by Part 312 of the Code of Federal Regulations. The regulations contain procedures which govern the use of investigational new drugs and which govern the review of IND Applications by the FDA. The regulations apply to all products which are "subject to section 505 or 507 [21 U.S.C. §§ 355, 357] of the Federal Food, Drug, and Cosmetic Act or to the licensing provisions of the Public Health Service Act." 21 C.F.R. § 312.2(a).

Section 505 (21 U.S.C. § 355) governs the approval of new drugs. "Drug" is defined in 21 U.S.C. § 321 to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals." 21 U.S.C. § 321. The Magistrate Judge concludes that these sections apply to the goat neutralizing antibody drug which Plaintiff requests that he be permitted to take.

Section 312.20(b) of the regulations provides that a "sponsor shall not begin a clinical investigation subject to § 312.2(a)[2] until the investigation is subject to an IND which is in effect in accordance with § 312.40." 21 C.F.R. § 312.20(b). In accordance with § 312.40, such a new drug may be used in a

---

1. The characterization of this drug is based on Plaintiff's characterization in his brief of the specific treatment Plaintiff is seeking from Dr. Davis.

2. As noted above, § 312.2(a) applies to the new drug which Plaintiff is requesting he be permitted to use.

clinical investigation [3] only if the sponsor of the drug submits an IND to the FDA; the IND is "in effect;" and the sponsor has complied with the clinical investigation requirements of the regulations. 21 C.F.R. § 312.40(a)(1). Therefore, in accordance with these regulations, before a new drug can be used, the sponsor must first obtain an IND.

Plaintiff acknowledges the entire IND Application process. However, Plaintiff argues that an exception to this process exists under the "practice of medicine" exemption and under the regulations governing Institutional Review Boards ("IRB"). Plaintiff asserts that both of these exceptions apply and that an injunction should therefore be issued prohibiting the FDA from interfering with his taking the goat neutralizing antibody drug.

### Practice of Medicine Exception

[█] Plaintiff argues that a "commonly recognized exception to the FDCA's broad coverage" is the "practice of medicine exemption." Plaintiff refers to several cases and cites some legislative history. Plaintiff initially refers to *United States of America v. Algon Chemical Inc.*, 879 F.2d 1154 (3rd Cir.1989). Plaintiff quotes some of the following language from the *Algon* case.

> [W]hen practitioners "manufacture, prepare, propagate, compound, or process drugs or devices solely for use in the course of their professional practice," they are not subject to the *registration* requirement that applies to others who engage in such activities.

*Algon Chemical*, 879 F.2d at 1159 (Plaintiff omits the relevant underlined language).

The *Algon* Court cites and relies upon 21 U.S.C. § 360(g)(2) as establishing the "practice of medicine" exception. Section 360 is a registration requirement for producers of drugs or devices. In general, the statute requires that each person who owns or operates any establishment engaged in the manufacture, preparation, propagation, compounding or processing of a drug or a device must register his name and place of business with

the Secretary. The statute also provides an *exception* to this *registration* requirement. The exception is in sub-section (g)(2), and exempts from the registration requirements those

> practitioners licensed by law to prescribe or administer drugs and who manufacture, prepare, propagate, compound, or process drugs solely for use in the course of their professional practice.

21 U.S.C. § 360(g)(2). Consequently, the "medical practice exemption" referenced by Plaintiff is a *very limited* exemption from the *registration* requirements of the FDCA. Plaintiff's assertion that this exception provides a broad-based exemption to all physicians from the requirements of the Food, Drug, and Cosmetic Act is incorrect.

The *Algon* Court further explains that the limited "practice of medicine" exception is intended to permit doctors who acquire approved and legally available drugs to "compound" those drugs in the course of their practice without first obtaining FDA approval. Nothing in the FDCA or the case law suggests that the exception was intended to be expanded to permit doctors to test unapproved drugs.

> Congress intended to authorize compounding with legally acquired drugs and not to create an exception to the Act's premarket approval process as explicated by the Supreme Court in *United States v. Rutherford.*

> ***

Thus, the medical practitioner exemptions by their terms afford no more than the right to be free from inspection and registration requirements when veterinarians and other practitioners compound medicine with legally acquired materials, not the right to acquire unapproved drug substances. Indeed, any other interpretation could not be squared with the Supreme Court's decision, and understanding of congressional intent, in *United States v. Rutherford.*

---

**3.** "Clinical investigation means any experiment that involves a test article and one or more human subjects...." 21 C.F.R. § 56.102(c).

*United States v. Algon Chemical, Inc.*, 879 F.2d 1154, 1159 (3rd Cir.1989).

Plaintiff also relies on *Chaney v. Heckler*, 718 F.2d 1174 (D.C.Cir.1983). *Chaney* notes,

> The better explanation for the practice-of-medicine exemption is that Congress did not want to interfere with physicians' treatment of their patients. New uses for drugs are often discovered after FDA approves the package inserts that explain a drug's approved uses. Congress would have created havoc in the practice of medicine had it required physicians to follow the expensive and time-consuming procedure of obtaining FDA approval before putting drugs to new uses. Thus Congress exempted the practice of medicine from the Act so as not to limit a physician's ability to treat his patients.

*Chaney* 718 F.2d at 1180. *Chaney* does not support Plaintiff's interpretation of the "practice of medicine" exemption.

### Institutional Review Boards (IRB) Exception

The regulations governing IRBs are located in 21 C.F.R. Part 56. The regulations

> contain the general standards for the composition, operation, and responsibility of an Institutional Review Board (IRB) that reviews clinical investigations regulated by the Food and Drug Administration under sections 505(i), 507(d), and 520(g) of the act. . . .

21 C.F.R. § 56.101. Therefore, IRB regulations recognize that the IRB reviews the clinical investigations which are regulated by the FDA.

Plaintiff asserts that Dr. Davis has effectively established an IRB which will review Dr. Davis' protocol in accordance with the regulations. Plaintiff notes that usually an IRB must approve the use of a drug before the drug is dispensed to patients. According to Plaintiff, however, an exception exists for an "emergency use" of a drug. Such an emergency use is permitted as long as the IRB is informed of the use within five days of the use of the drug. Plaintiff argues that his situation constitutes an emergency use. Although Plaintiff correctly identifies an "emergency use" which permits the use of a drug followed by notification to the IRB within five days, the exception identified by Plaintiff in no way excepts the process from prior approval of the IND application.

█] As explained in the regulations, an IRB reviews clinical investigations which are regulated by the FDA. 21 C.F.R. § 56.101. Plaintiff argues that he meets the "emergency use" exception. However, Plaintiff does not explain how meeting the emergency use exception exempts him from the application of Part 312. Section 56.103 provides the "circumstances in which IRB review is required."

> Except as provided in §§ 56.104 and 56.105, any clinical investigation *which must meet the requirements for prior submission (as required in parts 312,* 812, and 813) to the Food and Drug Administration shall not be initiated unless that investigation has been reviewed and approved by, and remains subject to continuing review by, an IRB meeting the requirements of this part.

21 C.F.R. § 56.103 (emphasis added). The exemption from IRB application which Plaintiff references is § 56.104(c) which provides that

> [t]he following categories of clinical investigations *are exempt from the requirements of this part for IRB review:*
> ***
> Emergency use of a test article, provided that such emergency use is reported to the IRB within 5 working days.

21 C.F.R. § 56.104(c) (emphasis added). Emergency use is also defined in the regulations as

> the use of a test article on a human subject in a life-threatening situation in which no standard acceptable treatment is available, and *in which there is not sufficient time to obtain IRB approval.*

21 C.F.R. § 56.102(d) (emphasis added). Assuming Plaintiff is correct, and this exemption is applicable, application of the exemption does not further Plaintiff's cause. This exemption merely permits an exception from prior IRB approval during a clinical investigation, and requires Plaintiff's doctor to noti-

fy the IRB of any "emergency use" within five days of such a use. No exception is given that would excuse the required prior approval of the IND Application by the FDA.

Plaintiff also attempts to address the interaction between Part 312 (21 C.F.R. § 312, Investigational New Drugs) and Part 56 (21 C.F.R. § 56, Institutional Review Boards). Plaintiff suggests that Part 312 recognizes the exemption for IRBs in 21 C.F.R. § 312.2(b). This section does provide a *very limited* exemption. The Section states:

(1) The clinical investigation of a drug product that is lawfully marketed in the United States is exempt from the requirements of this part *if all the following apply:*

(i) The investigation is not intended to be reported to FDA as a well-controlled study in support of a new indication for use nor intended to be used to support any other significant change in the labeling for the drug;

(ii) If the drug that is undergoing investigation is lawfully marketed as a prescription drug product, the investigation is not intended to support a significant change in the advertising for the product;

(iii) The investigation does not involve a route of administration or dosage level or use in a patient population or other factor that significantly increases the risks (or decreases the acceptability of the risks);

(iv) The investigation is conducted in compliance with the requirements for institutional review set forth in part 56 and with the requirements for informed consent set forth in part 50; and

(v) The investigation is conducted in compliance with the requirements of § 312.7.

21 C.F.R. § 312.2(b) (emphasis added). Plaintiff refers *only* to sub-section (iv) above, which does reference IRBs, and states that Plaintiff therefore meets the exemption.

However, as noted in the preface to the exemption, *all* of the requirements (that is (i)–(v)) must be met before the exemption applies. Plaintiff does not argue and cannot establish that all of the requirements are met. The Magistrate Judge concludes that Plaintiff does not meet this exemption.

Plaintiff's final argument is that analogous regulations in Part 812 establish the "primacy of the Part 56 process." Part 812 regulates "medical devices." Plaintiff does not explain, or offer any reasons, why the regulation of medical devices is analogous to the use of experimental drugs. Regardless, even if "part 812 recognizes the primacy of the Part 56 process," the regulation of new drugs is regulated by Part 312 which requires that an IND Application must be approved *before* an IRB can oversee the conducting of clinical investigations.

The Court is sympathetic to Plaintiff's situation. However, the law is very clear, and under the current statutes and regulations, Plaintiff's physician may not administer the goat neutralizing antibody drug absent prior approval of the FDA. In Court, Plaintiff argued that he should have the right to take whatever treatment he wishes due to his terminal condition regardless of whether the FDA approves the treatment as effective or safe, and that to prohibit him from taking the treatment he wishes violates his rights under the United States Constitution.[4] The United States Supreme Court previously addressed and rejected this argument in *Rutherford.* In *Rutherford,* cancer patients requested the right to use Laetrile, arguing, as does Plaintiff, that for terminally ill patients the effectiveness or safety of the proposed treatment is irrelevant since such treatment is a last chance effort. However, as identified by the Supreme Court in *Rutherford,* to permit terminally ill patients to seek any type of treatment regardless of the effectiveness of such treatment would create a cottage industry existing solely to provide potential panaceas to highly vulnerable patients. The language of the Supreme Court in rejecting the Laetrile argument is equally applicable here.

---

**4.** Plaintiff testified that he is guaranteed the right to "life, liberty, and happiness," and that if he died he would not be "happy."

If history is any guide, this new market would not be long overlooked. Since the turn of the century, resourceful entrepreneurs have advertised a wide variety of purportedly simple and painless cures for cancer, including liniments of turpentine, mustard, oil, eggs, and ammonia; peat moss; arrangements of colored floodlamps; pastes made from glycerin and limburger cheese; mineral tablets; and 'Fountain of Youth' mixtures of spices, oil, and suet. In citing these examples, we do not, of course, intend to deprecate the sincerity of Laetrile's current proponents, or to imply any opinion on whether that drug may ultimately prove safe and effective for cancer treatment. But this historical experience does suggest why Congress could reasonably have determined to protect the terminally ill, no less than other patients, from the vast range of self-styled panaceas that inventive minds can devise.

*Rutherford*, 442 U.S. at 558, 99 S.Ct. 2470 (citations omitted).

This Court is in no way criticizing the intentions of Plaintiff and his physician or the potential effectiveness of the proposed treatment. Plaintiff's physician should pursue approval of his Investigational New Drug application as quickly as possible. Plaintiff's doctor must obtain appropriate approval through the proper regulatory authorities. As much as this Court may empathize with Plaintiff, the authority to provide some type of exemptions for individuals such as Plaintiff rests with Congress and not with this Court.

### RECOMMENDATION

The undersigned United States Magistrate Judge recommends that the District Court **DENY** Plaintiff's request for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction.

### OBJECTIONS

The District Judge assigned to this case will conduct a *de novo* review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the mater to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States,* 950 F.2d 656 (10th Cir.1991); and *Talley v. Hesse,* 91 F.3d 1411, 1412–13 (10 Cir.1996).

Dated this 15th day of January.